COMMISSIONER OF LABOR AND INDUSTRY *v.*
EDWARD FITZWATER t/a FitzWater
Furniture Company

[No. 119, September Term, 1976.]

*Decided March 23, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Walter T. Seidel, Assistant Attorney General,* on the brief, for appellant.

*Paul Mark Sandler,* with whom was *Raymond F. Altman* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

This case concerns the Boiler and Pressure Vessel Safety Act, Maryland Code (1957, 1971 Repl. Vol., 1976 Cum. Supp.) Art. 48, §§ 167-181 (the Act). Alleging that a boiler in the place of business of Edward Fitzwater, trading as Fitzwater Furniture Company (Fitzwater) had exploded, the Commissioner of the Division of Labor and Industry, Department of Licensing and Regulation of the State of Maryland (the State) filed a petition in the Circuit Court for Garrett County praying the issuance of a mandatory injunction ordering Fitzwater to permit the State to inspect the boiler.[1] By order of 2 September 1976, the court denied

---

1. The petition for a mandatory injunction was filed 7 June 1976, and the court ordered that Fitzwater show cause on or before 21 June why the petition should not be granted. Fitzwater complied with the show cause order. He answered the petition on 26 July and on the same date filed a cross-petition for a declaratory judgment, injunctive relief and damages. Trial was held the next day.

In the answer to the petition and in the cross-petition Fitzwater requested that the Boiler and Pressure Vessel Safety Act be declared unconstitutional on its face and as applied to him. The record does not show that an answer to the cross-petition was ever filed. At the conclusion of the trial the court held the matter *sub curia.* Neither the order issued 2 September 1976 nor the opinion accompanying it expressly mentioned the cross-petition.

the petition and declared § 176 (a) of the Act "unconstitutional as violative of the Fourth Amendment to the Constitution of the United States." The State appealed to the Court of Special Appeals, and we granted a writ of certiorari before decision by that court. We have determined that the refusal to issue the injunction was proper but find no need to reach the constitutional issue. We shall modify the order by striking therefrom the declaration of unconstitutionality and affirm the order as modified.

I

The facts and circumstances leading to the petition for a mandatory injunction, presented to the court below by stipulation, are not in dispute.

On 29 April 1976, Herbert D. Hickman, employed as a deputy boiler inspector by the Division of Labor and Industry of the Licensing and Regulation Department of the State of Maryland, received information that a boiler had exploded that day on the premises of the Fitzwater Furniture Company. He telephoned Fitzwater stating that he intended to inspect the boiler the next day under the authority of § 176 of the Act. A mutually acceptable time was set for Hickman's visit, but Fitzwater did not indicate that Hickman would be afforded access to the boiler to make the inspection. Hickman went to Fitzwater's store at the agreed time. Because Hickman did not have a search warrant, Fitzwater denied him permission to enter that portion of the premises necessary to inspect the damaged boiler, but which was not open to the public. Hickman made no attempt to enter forcibly. He did not apply for a search warrant but obtained an arrest warrant, apparently on the ground that Fitzwater interfered with and impeded Hickman in his official duties, a violation of the Act, subjecting the violator upon conviction to fine and imprisonment. Art. 48, § 177 (f). Fitzwater was taken into custody but subsequently released. The State then sought the mandatory injunction to compel Fitzwater to allow the inspection.

## II

The General Assembly of Maryland in enacting the Boiler and Pressure Vessel Safety Act upon a finding that "there have been numerous recent incidents of peril to the safety of life, limb and property due to improper and/or inadequate construction, installation, maintenance, use, repair or inspection of boilers and pressure vessels operating in this State," declared that it was the policy of the Act and the intent of the General Assembly "to establish boiler and pressure vessel safety standards in the State of Maryland to provide a level consistent with the needs of the population for their safety of life, limb and property." Art. 48, § 167. In furtherance of this policy and intent the General Assembly adopted a comprehensive scheme, set out in the Act, to be enforced through penal sanctions. A Board of Boiler Rules (the Board) was created by § 169 of the Act and powers were vested in it to be exercised subject to the power and authority of the Secretary of Licensing and Regulation. The Board was to formulate definitions, rules and regulations for the safe construction, use, installation, maintenance, repair and inspection of boilers and pressure vessels. Art. 48, § 170.

Inspection and certification of certain types of boilers and pressure vessels constitute the heart of the scheme, and § 176 of the Act concerns them. Two types of inspections are authorized: (1) a construction or installation inspection, and (2) a certificate inspection. The construction or installation inspection is provided by subsections (a) and (e). Subsection (a) declares:

> The chief boiler inspector or any deputy boiler inspector [see § 173] shall have free access, during reasonable hours, to any premises in the State where a boiler or pressure vessel is being constructed for use in or is being installed in this State for the purpose of ascertaining whether such boiler or pressure vessel is being constructed and installed in accordance with the provisions of this subtitle.

Subsection (e) requires that certain boilers and pressure vessels to be installed in this State shall be inspected during construction (in or outside the State) or during field assembly as required by the applicable rules and regulations of the Board.

A certificate inspection is "an inspection, the report of which is used by the chief boiler inspector to decide whether or not a certificate as provided for [by the Act] may be issued." Art. 48, § 168 (c). Subsection (b) of § 176 calls for certificate inspections of non-exempt boilers and pressure vessels.[2] Certificate inspections shall be made by the chief boiler inspector, a deputy boiler inspector or a special inspector, see subsection (c), at various intervals depending upon the type of boiler or pressure vessel as set out in paragraphs (1) through (7) of subsection (b).[3]

It is manifest that § 176 of the Act authorizes only the two types of inspection — a construction or installation inspection and a certificate inspection. The first type shall be made when the boiler or pressure vessel is being constructed, field assembled or installed. Its purpose is to ascertain whether the boiler or pressure vessel is being constructed or installed in accordance with the provisions of the Act. The second type shall be made upon expiration of the certification of a boiler or pressure vessel. Its purpose is to ascertain whether the boiler or pressure vessel qualifies for the issuance of an inspection certificate.

### III

The evidence before the trial court and rational inferences therefrom were not sufficient to show that the inspection sought by the State was either of the two kinds authorized by § 176 of the Act. The evidence was that the

---

**2.** Section 172 of the Act designates boilers and pressure vessels to which the provisions of the Act do not apply.

**3.** As the Board is responsible to provide for the safety of life, limb and property under the Act, it has jurisdiction over the interpretation and application of the inspection requirements set out in the rules and regulations formulated by it, within certain guidelines enunciated by subsection (b) (8) of § 176.

deputy boiler inspector upon receiving information that Fitzwater's boiler had exploded thereupon sought to inspect it. There was no indication that another boiler was being installed and that the inspection desired was to determine whether the installation was in accordance with the provisions of the Act. No details with respect to the boiler or the explosion were presented. It was not shown whether the damaged boiler was currently certified and if so when the certification expired.[4] The inescapable conclusion is that the State wanted to inspect the boiler to determine why it exploded,[5] and, on the evidence before it, the court below could not properly find otherwise. While the objective of the State was undoubtedly commendable, that type of inspection is not one for which the State is afforded "free access, during reasonable hours" by § 176 of the Act, even if such provision were construed as not requiring a search warrant and even if it were deemed constitutional.

Because the Act does not authorize the inspection sought, the State had no right under § 176, regardless of any constitutional question, to enter on the premises to make such inspection. Therefore, the court below properly denied the petition for a mandatory injunction. The court erred, however, in deciding the constitutional issue. It is the established rule that courts do not decide constitutional issues if the case can be decided on other grounds. *Caplan Bros. v. Village of Cross Keys*, 277 Md. 41, 45-46, 353 A. 2d 237 (1976); *Tauber v. Montgomery County*, 244 Md. 332, 337-338, 223 A. 2d 615 (1966); *Middleman v. Md.-Nat. Comm.*, 232 Md. 285, 289, 192 A. 2d 782 (1963); *Jeffers v. State*, 203 Md. 227, 230, 100 A. 2d 10 (1953); *State v. Insley*, 64 Md. 28, 30 (1885).

---

4. In fact, the evidence adduced did not disclose whether the boiler that exploded was one to which the Act applied or whether it was one exempt under § 172. In any event, Fitzwater did not claim below nor does he suggest on appeal that the boiler was not subject to the Act, and, for the purpose of decision, we assume that the provisions of the Act applied to it.

5. As we have indicated, criminal prosecution may be instituted for violations of the Act, and upon conviction the violator is subject to a fine of $5,000 or imprisonment for not more than 5 years or both for each offense. Art. 48, § 177 (f).

We modify the order of 2 September 1976 by deleting therefrom the following:

"and the provisions of Article 48, Section 176 (a) are unconstitutional as violative of the Fourth Amendment to the Constitution of the United States."

As modified, the order is affirmed.[6]

*Order of 2 September 1976 modified in accordance with this opinion and as modified affirmed; costs to be paid by appellant.*

---

6. At the trial the State offered into evidence the Rules and Regulations of the Board of Boiler Rules and in the appendix to its brief set out Rule 09.12.01.02 N (1) and (2) pertaining to notification of the Chief Boiler Inspector by the owner of a boiler or pressure vessel in case of an accident or explosion and prohibiting the removal of the boiler or pressure vessel until an inspection has been made. No point, however, is made regarding this Rule in the argument in the State's brief and we do not consider it. Maryland Rules 831 c 5 and 846 f.