THEODORE E. RUTHERFORD *v.* WILLA DEAN
RUTHERFORD

\* \* \*

BRUCE O. KATZENBERGER *v.* TERESA
KATZENBERGER

[No. 104, September Term, 1982.]

*Decided August 5, 1983.*

348

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Gary S. Offutt, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellants.

No briefs filed by appellees.

ELDRIDGE, J., delivered the opinion of the Court. MURPHY, C. J., concurs in part and dissents in part and filed a concurring and dissenting opinion at page 365 *infra.*

We granted the petition for a writ of certiorari in these cases to decide whether, as a matter of due process, a defendant in a civil contempt proceeding, in which the court orders actual incarceration, has the right to counsel including government furnished counsel if the defendant is indigent. We hold that this right is guaranteed by the Due Process Clause of the Fourteenth Amendment and by Art. 24 of the Maryland Declaration of Rights.

## I.

The relevant facts in each of the two cases before us are as follows.

### A. *Katzenberger v. Katzenberger*

On February 2, 1978, the Circuit Court for Anne Arundel County ordered that the defendant Bruce O. Katzenberger make weekly child support payments of $10.00 per child for each of his two children, or a total of $20.00 weekly, through the Domestic Relations Division of the court. The two children were in the custody of the defendant's former wife, the plaintiff Teresa Katzenberger. After an arrearage had accumulated because of the defendant's failure to make regular payments, the court on April 10, 1979, ordered that the defendant pay an additional $5.00 per week towards the arrearage.

Subsequently, on seven different occasions, the Domestic Relations Division of the Circuit Court for Anne Arundel County filed petitions to cite the defendant for contempt for failure to comply with the 1978 and 1979 support orders, and each time the circuit court issued an order to show cause. Nevertheless the sheriff was unable to locate the defendant, and the petitions and orders were never served. Finally the plaintiff retained private counsel who, by using a private process server, was able to serve the defendant with a petition for contempt and an order to show cause.

A hearing on the contempt petition was held on July 21, 1982, at which the plaintiff was represented by counsel. The defendant was not represented by counsel; he was not advised by anyone concerning a right to counsel, and nothing was said by the court or by the plaintiff's attorney concerning his lack of representation.[1] A support officer of

---

1. The earlier unserved contempt petitions and orders to show cause, which were on a Domestic Relations Division form, contained the following language at the bottom:

"NOTICE TO DEFENDANT:
    You can be sentenced to confinement in the Anne Arundel

the circuit court's Domestic Relations Division testified that the arrearage then due was $3,714.74, of which $2,219.44 was owed to the State of Maryland for "social service payments" made to the plaintiff and $1,495.30 was owed to the plaintiff. After the plaintiff herself testified, her counsel concluded the plaintiff's case by asking that the defendant be held in contempt and that attorney fees be awarded.

The defendant was then given an opportunity to testify, and he began by referring to the plaintiff's request for attorney fees:

"Your honor, as far as paying legal fees for [the plaintiff], I feel that if I could pay a lawyer it would be for myself, rather than [the plaintiff]. I am currently unemployed, which Mr. Bustard [the Domestic Relations Division support officer] is aware of."

Mr. Katzenberger went on to testify that he had been discharged from his last place of employment, that the pay due him from that employer had been attached, that he was "receiving unemployment benefits which don't amount to much," and that his current wife "works to support myself and our four year old child. And we are just barely making it." He further testified that he had been seeking employment by looking in newspapers, going to the "unemployment office," and "walk[ing] into a lot of places," but that he had no employment prospects at the time.

On cross-examination, Mr. Katzenberger acknowledged that, when he had been employed, he had not made some

---

County Detention Center for contempt of Court. Therefore, you are advised that you have the right to be represented, at the hearing, by an Attorney. If you can not afford to employ an Attorney, you are instructed to immediately contact the Office of the Public Defender. Failure to do so may constitute a waiver of your right to be represented by counsel. You are also directed to bring with you your latest pay vouchers, any and all receipts, money order stubs and/or cancelled checks evidencing your support payments, complete itemization of your assets and living expenses."

The contempt petition and order to show cause which were apparently prepared by the plaintiff's attorney, which were served upon the defendant, and which commenced the instant contempt case, did not contain any language with regard to the defendant's right to counsel.

support payments because he was saving his money to retain a lawyer in connection with "my visitation rights which were denied for six years." After cross-examination, Mr. Katzenberger stated to the court that some payments were taken out of his salary when he was employed, that "the majority of the payments made this year were voluntarily made from out of my unemployment benefits or money that I had borrowed from my wife or mother," that he was not "evading or trying to avoid making these payments," and that the payments would be made "if I had it in my means."

At the conclusion of the hearing, the trial judge stated:

> "Well, I think certainly I will find you in contempt. You didn't pay when you could have paid, recognizing the fact that you are now unemployed the situation is somewhat different. But I think you have to make every effort to get yourself employed so you are back in the position not only to make the current payments but to start paying on the arrearage."

On July 30, 1982, the court signed an order sentencing Katzenberger to serve six months in the Anne Arundel County Detention Center, with the sentence to begin on September 1, 1982. Under the court's order, the defendant could purge himself of the contempt by paying "$300.00 toward his arrearage," plus $10.00 per week per child toward the arrearage, plus $10.00 per week per child for current child support.

Thereafter, an attorney in the Public Defender's Office entered his appearance as Mr. Katzenberger's attorney, and, on August 30, 1982, an appeal was taken to the Court of Special Appeals. Prior to a hearing in the Court of Special Appeals, this Court granted Katzenberger's petition for a writ of certiorari.[2]

---

**2.** Initially, as a result of an agreement between the plaintiff's attorney and the Assistant Public Defender, the order sentencing Mr. Katzenberger to six months in jail was stayed pending appeal. After this Court granted the petition for a writ of certiorari, counsel for the plaintiff filed a motion to dismiss the appeal as moot, attaching an order of the circuit court dated

## B. *Rutherford v. Rutherford*

Theodore E. Rutherford and Willa Dean Rutherford, then husband and wife, entered into a separation and property settlement agreement in January 1982, under which, among other things, Theodore Rutherford agreed to pay Willa Dean Rutherford $400.00 per week for the support and education of their two minor children. In the Circuit Court for Anne Arundel County, on March 23, 1982, Willa Dean Rutherford was granted a divorce *a vinculo matrimonii,* with the decree embodying the requirement that Theodore Rutherford make weekly child support payments of $400.00.

In April 1982, Mrs. Rutherford filed a petition to hold her former husband in contempt for failing to make child support payments under the decree, and an order to show cause was entered. The matter was heard by the Circuit Court for Anne Arundel County on May 11, 1982. At the beginning of

---

November 24, 1982, stating that Mr. Katzenberger's "payment of $205.00 towards support arrearage is sufficient to purge the Defendant of contempt of this Court" and ordering that "the six month jail sentence set forth in this Court's order of July 30, 1982 is hereby vacated." The November 24th order concluded by requiring the defendant to pay the costs of the contempt proceedings. The defendant opposed the motion to dismiss on the grounds (1) that the case was not moot because of the defendant's liability for costs and (2) that even if it were moot, the case involved frequently recurring issues of public importance which ought to be decided. On December 20, 1982, this Court issued an order denying the motion to dismiss.

Although the order denying the motion did not specify the reasons, the order was based on the second ground urged by the defendant and not the first. It is settled that an otherwise moot case is not regarded as a live controversy merely because of liability for costs. *See, e.g.,* Wingert v. First National Bank, 223 U.S. 670, 672, 32 S.Ct. 391, 56 L.Ed. 605 (1912); Pearson v. Quinn, 113 Ark. 24, 166 S.W. 746 (1914); Meyer v. Marshall, 62 Ill.2d 435, 441, 343 N.E.2d 479 (1976); Dunn v. State, 163 Ind. 317, 320-321, 71 N.E. 890 (1904); Foucher v. Grass, 60 Iowa 505, 506-507, 15 N.W. 302 (1883); Commissioners v. Gill, 126 N.C. 86, 35 S.E. 228 (1900); In re Kaeppler, 7 N.D. 307, 75 N.W. 253 (1898); State v. Lambert, 52 W. Va. 248, 43 S.E. 176 (1903). As to those circumstances under which this Court will decide a moot case, *see, e.g.,* Hagerstown Repro. Health Serv. v. Fritz, 295 Md. 268, 272 (majority opinion), 273-274 (dissenting opinion), 454 A.2d 846, 848, 849 (1983); News American v. State, 294 Md. 30, 39, 447 A.2d 1264 (1982); Comm'n On Med. Discipline v. Stillman, 291 Md. 390, 398 n. 3, 435 A.2d 747 (1981); Kindley v. Governor of Maryland, 289 Md. 620, 631, 426 A.2d 908 (1981); Rockville Grosvenor, Inc. v. Mont. Co., 289 Md. 74, 84-85, 422 A.2d 353 (1980); Chase v. Chase, 287 Md. 472, 483-484 (dissenting opinion), 413 A.2d 208, 214 (1980); Attorney Gen. v. A. A. Co. School Bus, 286 Md. 324, 328 (majority opinion), 333-334 (dissenting opinion), 407 A.2d 749, 752, 755 (1979).

the hearing, after the plaintiff's attorney identified himself, the following colloquy occurred:

"COURT: And your name, sir?

DEFENDANT: Theodore Rutherford.

COURT: Mr. Rutherford, are you representing yourself?

DEFENDANT: I can't afford an attorney.

COURT: All right. Then I assume you're representing yourself. Do you understand why you're here?

DEFENDANT: Yes, sir.

COURT: Why are you here?

DEFENDANT: I'm here because I can't pay her the $400 a week child support.

COURT: Well, you're here because they're asking that you be held in contempt.

DEFENDANT: The Court ordered me to pay it . . . .

COURT: I understand that.

DEFENDANT: . . . and I can't."

As in the *Katzenberger* case, nothing was said to Mr. Rutherford during the hearing suggesting that he had a right to counsel.

The plaintiff testified at the May 11th hearing that the defendant made weekly payments in January 1982, that since February 1, 1982, he has paid her only $300.00, and that the arrearage amounted to $5,300.00. She further testified that the reason given to her by the defendant for not making the payments was that the defendant did not have the money and that he had lost his business.

The defendant, under questioning from the court, then testified that he had lost his business in early March 1982, that he had been unemployed since that time, that he had been seeking employment without success, and that he had been evicted from where he had lived "because the $300 —

the last $300 I gave her was my rent money." Mr. Rutherford further stated that he was presently living rent-free with a friend, that he had "sold just about everything I owned to just survive to now," and that "I lost my attorney 'cause I couldn't pay him for the work he had already done." On cross-examination, the plaintiff's attorney asked Mr. Rutherford whether he sold drugs, and the defendant replied that he did not.

At the conclusion of the testimony, the court asked the plaintiff's attorney "now how can I hold him in contempt?" The attorney responded by suggesting that Mr. Rutherford was in contempt for failing to make all of the payments for the period prior to early March when he became unemployed. In addition the plaintiff's attorney, while stating that he was in no position "at this time to introduce any evidence," stated his belief that Mr. Rutherford "has income from less conventional sources. And I believe if the Court would impose him in contempt that we would find that money would begin flowing." With regard to the suggestions that he had any income and that he had been dealing in drugs, the defendant in rebuttal stated that the allegations were "totally untrue."

The hearing ended with the court stating that it "accept[ed]" Mr. Rutherford's testimony concerning his "present situation," but that the defendant was in contempt because of his failure to make payments prior to the time in early March when he became unemployed. On May 12, 1982, an order was entered sentencing the defendant to the Anne Arundel County detention center for a period of ninety days, commencing May 26, 1982, with the defendant being able to purge himself by paying the arrearage.

Sometime after the May 12th order, an attorney in the Public Defender's Office began to represent the defendant, and, on May 21, 1982, the defendant's attorney filed a motion to revise the May 12th order. As a result of the motion, the court extended the date for Mr. Rutherford to begin serving his sentence until August 30, 1982, if he had not purged the contempt by that time. Otherwise, the May 12th order was left intact.

The defendant Rutherford, represented by the Public Defender's Office, took an appeal to the Court of Special Appeals. As in the *Katzenberger* case, this Court granted Rutherford's petition for a writ of certiorari prior to argument in the Court of Special Appeals.[3]

## II.

In this Court, both defendants present the same two issues. First, the defendants maintain that the contempt orders were erroneous because, at the time they were entered, the defendants were financially unable to comply with the purging provisions. Second, the defendants contend that they were denied the right to counsel guaranteed by the due process clauses of the federal and state constitutions. The defendant Rutherford makes a third argument, namely that the trial court erred in finding him in contempt "for failing to obey a court order at a time when the order did not exist." As we agree with the defendants' position on all three issues, we shall reverse.[4]

### A. *Financial Inability to Comply*

As the purpose of the contempt proceedings and orders in the instant cases was not punitive but was to coerce the defendants to comply with court orders for the benefit of their children, the contempt proceedings were civil and not criminal. *See, e.g., Elzey v. Elzey,* 291 Md. 369, 373, 435 A.2d 445 (1981); *Williams and Fulwood v. Director,* 276 Md. 272, 313, 347 A.2d 179 (1975), *cert. denied,* 425 U.S. 976, 96

---

**3.** Rutherford's brief indicates that the circuit court has stayed the enforcement of its order pending this appeal.

**4.** The defendants discuss a fourth question in their briefs, which is whether the correct standard of proof in cases such as this is "preponderance of the evidence," "clear and convincing evidence," or "beyond a reasonable doubt." At oral argument, however, the defendants' attorney conceded that the question is not actually presented by the facts of either case. Consequently, we express no opinion on this question at the present time. *See,* however, State v. Roll and Scholl, 267 Md. 714, 728, 298 A.2d 867, 69 A.L.R.3d 483 (1973).

S.Ct. 2178, 48 L.Ed.2d 801 (1976); *McDaniel v. McDaniel*, 256 Md. 684, 687, 262 A.2d 52 (1970); *Donner v. Calvert Distillers Corp.*, 196 Md. 475, 77 A.2d 305 (1950). The Maryland law concerning a defendant's ability to comply with a civil contempt order was recently summarized by us in *Elzey v. Elzey, supra,* 291 Md. at 374-375, as follows:

> "In all civil contempt proceedings, any order imposing a penalty upon the defendant must contain a purging provision with which the defendant has the ability to comply. *State v. Roll and Scholl, supra,* 267 Md. at 728; *McDaniel v. McDaniel, supra,* 256 Md. at 689-690, 692; *Johnson v. Johnson,* 241 Md. 416, 419-420, 216 A.2d 914 (1966). The 'choice' must be the defendant's 'as to whether [he can] comply.' *Williams and Fulwood v. Director, supra,* 276 Md. at 313.
>
> "Consequently, with regard to civil contempt proceedings based upon the defendant's failure to comply with a decree ordering support payments, 'imprisonment may be avoided by showing that one has neither the money nor the ability to pay.' *Soldano v. Soldano,* 258 Md. 145, 146, 265 A.2d 263 (1970). Moreover, the issue is not the ability to pay at the time the payments were originally ordered; instead, the issue is his *present* ability to pay. As stated in *Johnson v. Johnson, supra,* 241 Md. at 419-420:
>
>> 'If the father was unable to meet his obligation because he had neither a sufficient estate nor the *then* ability to pay, as the record seems to indicate, the court was not justified in incarcerating him.'

* * *

*See McDaniel v. McDaniel, supra,* 256 Md. at 692-693; *Speckler v. Speckler,* 256 Md. 635, 637, 261 A.2d 466 (1970); *Schwartzman v. Schwartzman,* 204 Md. 125, 135, 102 A.2d 810

(1954); *Oles Envelope Corp. v. Oles,* 193 Md. 79, 92, 65 A.2d 899 (1949); *Dickey v. Dickey,* 154 Md. 675, 681, 141 A. 387, 58 A.L.R. 634 (1928). *See also Chase v. Chase,* 287 Md. 472, 474, 484-486, 413 A.2d 208, 209, 214-215 (1980) (dissenting opinion)."

We further emphasized in *Elzey* that a defendant's failure to comply with a support order at some time in the past when he had the ability to comply, even if such previous noncompliance was in bad faith, does not justify incarceration for civil contempt if there is a present financial inability to comply. 291 Md. at 375-376.

The *Elzey* opinion, and the prior Maryland cases there cited, are dispositive here. In both the *Katzenberger* case and the *Rutherford* case the trial judges found that the defendants lacked a present ability to comply with the support orders. These findings were compelled by the uncontradicted evidence. Moreover in *Katzenberger,* where the purging provision did not require that the defendant pay the entire arrearage at once (although it did require that he make the full current payments plus weekly payments toward the arrearage), no finding was made that the defendant had the present ability to comply with the purging provision. In addition, the evidence would not have supported such a finding if it had been made. Consequently, both contempt orders were inconsistent with the principles set forth in *Elzey* and other cases.

## B. *The Right To Counsel*

The Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantee a right to counsel, including appointed counsel for an indigent, in a criminal case involving incarceration. *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Utt v. State,* 293 Md. 271, 274-275, 443 A.2d 582 (1982); *Williams v. State,* 292 Md.

201, 217-218, 438 A.2d 1301 (1981); *Thompson v. State,* 284 Md. 113, 122-123, 394 A.2d 1190 (1978); *Baldwin v. State,* 51 Md.App. 538, 548, 556, 444 A.2d 1058 (1982). The right extends to every "critical stage" of the criminal proceedings. *Utt v. State, supra,* 293 Md. at 275-279. Because the present contempt proceedings were civil and not criminal, however, the right to counsel under the Sixth Amendment and Article 21 is not directly involved in these cases.

Nevertheless, the constitutional right to counsel is broader than the specific guarantee of the Sixth Amendment and Article 21 of the Declaration of Rights. Under certain circumstances, the requirements of due process include a right to counsel, with appointed counsel for indigents, in civil cases or other proceedings not constituting critical stages of criminal trials. *Lassiter v. Department of Social Services,* 452 U.S. 18, 25-31, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Vitek v. Jones,* 445 U.S. 480, 496-499, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Gagnon v. Scarpelli,* 411 U.S. 778, 789-791, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *In re Gault,* 387 U.S. 1, 34-41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *State v. Bryan,* 284 Md. 152, 159 n. 6, 395 A.2d 475 (1978); *Dorsey v. Solomon,* 604 F.2d 271, 275 (4th Cir. 1979); *Johnson v. Solomon,* 484 F.Supp. 278, 291-295 (D.Md. 1979). Thus in *In re Gault, supra,* the Supreme Court held that as a matter of due process, the right to the assistance of counsel attached to *civil* juvenile delinquency proceedings because of "the awesome prospect of incarceration in a state institution," 387 U.S. at 36-37.

In light of *Gault* and similar cases, the overwhelming majority of courts throughout the country have held that due process requires the appointment of counsel for indigents in *civil* contempt proceedings if they are sentenced to imprisonment. As pointed out by the United States Court of Appeals for the Eighth Circuit in *United States v. Anderson,* 553 F.2d 1154, 1156 (8th Cir. 1977),

> "[d]eprivation of liberty has the same effect on the confined person regardless of whether the proceeding is civil or criminal in nature. We agree with

the decisions ... and hold that the Constitution requires that counsel be appointed for indigent persons who may be confined pursuant to a finding of civil contempt."

The same reasoning has been employed in the other cases holding that the right to appointed counsel for an indigent attaches in a civil contempt proceeding involving incarceration: *In re Di Bella,* 518 F.2d 955, 959 (2d Cir. 1975) ("the burden of imprisonment is just as great, regardless of what we call the order that imposed it"); *Otton v. Zaborac,* 525 P.2d 537, 539 (Alaska 1974) ("deprivation of liberty in nonsupport contempt proceedings is as serious a matter as the restraint of liberty ... in criminal, juvenile, and criminal contempt proceedings"); *People v. Lucero,* 584 P.2d 1208, 1214 (Colo. 1978) ("Labeling the contempt civil and conditioning the incarceration on a continued refusal to [comply] ... does not alter the burden of imprisonment"); *Tetro v. Tetro,* 86 Wash.2d 252, 544 P.2d 17, 19 (1975) ("The grim reality of a ... jail sentence overshadows the technical distinctions between 'criminal,' 'quasi-criminal,' and 'civil' violations and demands that the protection of legal advice and advocacy be given all persons faced with it").

Other cases taking the position that the right to counsel, including appointed counsel for indigents, attaches in civil contempt proceedings involving actual incarceration, are *In re Rosahn,* 671 F.2d 690, 697 (2d Cir. 1982); *In re Kilgo,* 484 F.2d 1215, 1221 (4th Cir. 1973); *Henkel v. Bradshaw,* 483 F.2d 1386, 1389-1390 (9th Cir. 1973); *United States v. Sun Kung Kang,* 468 F.2d 1368, 1369 (9th Cir. 1972); *Mastin v. Fellerhoff,* 526 F.Supp. 969, 972-973 (S.D. Ohio 1981); *Young v. Whitworth,* 522 F.Supp. 759, 762-764 (S.D. Ohio 1981); *P.R. v. District Court, Etc.,* 637 P.2d 346, 350 (Colo. 1981); *Padilla v. Padilla,* 645 P.2d 1327 (Colo.App. 1982); *McNabb v. Osmundson,* 315 N.W.2d 9 (Iowa 1982); *Meyer v. Meyer,* 414 A.2d 236, 239 (Me. 1980) (holding of intermediate appellate court which was not challenged in Supreme Court); *In Interest of Holmes,* 355 So.2d 677, 679 (Miss. 1978); *Kissel v. Kissel,* 59 A.D.2d 1036, 399 N.Y.S.2d

781 (1977); *Hickland v. Hickland,* 56 A.D.2d 978, 393 N.Y.S.2d 192 (1977); *Rudd v. Rudd,* 45 A.D.2d 22, 356 N.Y.S.2d 136 (1974); *Jennings v. Jennings,* 42 A.D.2d 568, 344 N.Y.S.2d 93 (1973); *State ex rel. Spencer v. Howe,* 281 Or. 599, 576 P.2d 4 (1978); *Commonwealth ex rel. Brown v. Hendrick,* 220 Pa.Super 225, 283 A.2d 722 (1971); *Ex parte Hiester,* 572 S.W.2d 300, 302-303 (Tex.S.Ct. 1978); *Smoot v. Dingess,* 236 S.E.2d 468, 471 (W.Va. 1977); *Ferris v. State ex rel. Maass,* 75 Wis.2d 542, 249 N.W.2d 789 (1977); *Brotzman v. Brotzman,* 91 Wis.2d 335, 283 N.W.2d 600 (Wis. App. 1979).

A minority rule was set forth by the Supreme Court of Michigan in *Sword v. Sword,* 399 Mich. 367, 249 N.W.2d 88 (1976). The court in that case held that in a civil contempt proceeding based on the failure to comply with a support order there was a right to appointed counsel for an indigent only when "special circumstances" were present but that "as a general rule" there was no constitutional right to appointed counsel. But later, in *People v. David Johnson,* 407 Mich. 134, 283 N.W.2d 632 (1979), the same court held that there was a due process right to appointed counsel for an indigent in a civil contempt case based upon failure to comply with an order to testify. The court briefly distinguished *Sword* because of different "factors" in the two cases, 407 Mich. at 152.[5]

We believe that the majority view is sound. A defendant's actual incarceration in a jail, as a result of a proceeding at

---

5. The Supreme Court of North Carolina followed the *Sword* holding in Jolly v. Wright, 300 N.C. 83, 92, 265 S.E.2d 135 (1980). But *cf.* Wake County, ex. rel. Carrington v. Townes, 306 N.C. 333, 293 S.E.2d 95, 97 (1982), *cert. denied,* U.S. , 103 S.Ct. 745, 74 L.Ed.2d 965 (1983). The *Sword* case was also followed in State ex rel. Dept. of Human Services v. Rael, 97 N.M. 640, 642 P.2d 1099, 1103 (1982), although the court there "recognize[d] that there may be cases in which the defendant would be deprived of a fundamentally fair contempt hearing if assistance of counsel were not provided." 642 P.2d at 1103-1104. *See also* Duval v. Duval, 114 N.H. 442, 427, 322 A.2d 1, 4 (1974) (discussion of the issue, although not involving a proceeding directly culminating in an order of actual incarceration, and the court "was unable to determine whether counsel should have been appointed in these proceedings"); Andrews v. Walton, 428 So.2d 663 (Fla.S.Ct. 1983).

which he was unrepresented by counsel and did not knowingly and intelligently waive the right to counsel, is fundamentally unfair. As repeatedly pointed out in criminal and civil cases, it is the fact of incarceration, and not the label placed upon the proceeding, which requires the appointment of counsel for indigents. With regard to the minority "special circumstances" rule set forth in the *Sword* case, very often the "special circumstances" requiring the assistance of counsel are not apparent until the defendant is represented by counsel. Moreover, the deprivation of liberty is itself a "special circumstance" requiring the assistance of counsel. *Cf. Gideon v. Wainwright, supra,* 372 U.S. at 351 (concurring opinion of Justice Harlan). *See also Scott v. Illinois, supra,* 440 U.S. at 373 ("that actual imprisonment is a penalty different in kind ... is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel").

The recent opinion of the United States Supreme Court in *Lassiter v. Department of Social Services, supra,* 452 U.S. 18, confirms the correctness of the majority view that an indigent has a due process right to appointed counsel in a civil contempt case involving actual incarceration. Although *Lassiter* involved a civil paternity action and not a civil contempt action, the Court set forth principles governing the federal constitutional right to counsel in civil cases. The Court initially stated in *Lassiter* that "[t]he pre-eminent generalization that emerges from this Court's precedents on an indigent's right to appointed counsel is that" the existence of the right depends upon whether "the litigant may lose his physical liberty if he loses the litigation." 452 U.S. at 25. After citing the leading criminal cases concerning the right to counsel, the Court went on (*id.* at 25-26):

"That it is the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases, which triggers the right to appointed counsel is demonstrated by the Court's an-

nouncement in *In re Gault,* 387 U.S. 1, that 'the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine the delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed,' the juvenile has a right to appointed counsel even though those proceedings may be styled 'civil' and not 'criminal.' *Id.,* at 41 (emphasis added). Similarly, four of the five Justices who reached the merits in *Vitek v. Jones,* 445 U.S. 480, concluded that an indigent prisoner is entitled to appointed counsel before being involuntarily transferred for treatment to a state mental hospital. The fifth Justice differed from the other four only in declining to exclude the 'possibility that the required assistance may be rendered by competent laymen in some cases.' *Id.,* at 500 (separate opinion of POWELL, J.)."

Later the Court summarized (*id.* at 26-27):

"In sum, the Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured."

Finally, after stating that there is a presumption against a due process right to appointed counsel "in the absence of at least a potential deprivation of physical liberty," the Supreme Court suggested that this presumption could be rebutted and that, even in the absence of incarceration, due process may require the appointment of counsel in civil cases under some circumstances. *Id.* at 27-32. The *Lassiter* case thus indicates that the federal due process standard governing the appointment of counsel for indigents in civil

cases is, generally, the presence or absence of actual incarceration.

The two cases before us illustrate the need for counsel in cases of this nature. As pointed out in Part II A of this opinion, neither defendant should have been incarcerated in light of this Court's opinions in *Elzey v. Elzey, supra; McDaniel v. McDaniel, supra; Johnson v. Johnson, supra;* and similar opinions. These authorities were not called to the attention of the trial judges at the hearings leading to the orders of incarceration in the cases at bar. The non-lawyer defendants in the instant cases could not have been expected to be familiar with this Court's prior opinions concerning civil contempt for failure to comply with support orders, but competent counsel representing defendants in this area of law should be familiar with such opinions. If the defendants Katzenberger and Rutherford had been represented by the Public Defender's Office at the circuit court hearings, it is doubtful that they would have been sentenced to imprisonment.

Therefore, under the Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights, an indigent defendant in a civil contempt proceeding cannot be sentenced to incarceration unless he has been afforded the right to appointed counsel. This does not mean that a constitutional right to appointed counsel attaches in every civil contempt proceeding involving an indigent defendant. Rather, we hold only that, under the due process requirements of the federal and state constitutions, an indigent defendant in a civil contempt proceeding cannot be sentenced to actual incarceration unless counsel has been appointed to represent him or he has waived the right to counsel.[6] *Cf. Scott v. Illinois, supra,* 440 U.S. at 373-374.

---

[6]. Appointments of counsel will be made in accordance with the Public Defender Act, Maryland Code (1957, 1976 Repl. Vol.), Art. 27A, §§ 1-14. Although the issue is noted in the defendants' briefs, no argument has been made that, independently of due process requirements, the Public Defender Act itself, in § 4, affords the right to appointed counsel in cases such as this. We do not consider in these cases whether there exists such statutory right and, if so, the extent of the right.

## C. *The Order In The Rutherford Case*

As previously mentioned, the defendant Rutherford makes a third argument that the trial court erred in finding him in contempt for failing to comply with a court order at a time when the order did not exist.

Incarceration for contempt to enforce a child support provision of a separation agreement is permissible once the contractual provision is incorporated into a court decree. *Cf., Brown v. Brown,* 287 Md. 273, 275, 282, 412 A.2d 396 (1980). "Contempt proceedings, therefore, are now an appropriate means for enforcing the support payments, *after* the agreement has been approved by a decree," *Eigenbrode v. Eigenbrode,* 36 Md. App. 557, 560, 373 A.2d 1306 (1977) (emphasis supplied). The contempt is the refusal to comply with the court order, and not merely the breach of the prior support agreement. *Brown v. Brown, supra,* 287 Md. at 286-287.

The circuit court in the *Rutherford* case clearly based its contempt finding upon the defendant's failure to make sup-

---

Chief Judge Murphy's concurring opinion in this case, which agrees that the judgments must be reversed for the reasons set forth in Part II A of this opinion, takes the position that the constitutional right to counsel issue should not be reached in light of the general rule that courts do not decide constitutional questions unnecessarily. We continue to adhere to the principle that "*[o]rdinarily* courts do not pass upon a constitutional question . . . if there is also present some other ground upon which to dispose of the case," Employ. Sec. v. Balto. Lutheran H.S., 291 Md. 750, 754 n. 2, 436 A.2d 481 (1981) (emphasis added). As indicated by the above-quoted language, this rule is not absolute. It reflects a policy of "judicial restraint" (Caplan Bros. v. Village of Cross Keys, 277 Md. 41, 45, 353 A.2d 237 (1976)) or a "general practice of this Court" (State v. Insley, 64 Md. 28, 30, 20 A. 1031 (1885)). Like other such general rules, it is not without exceptions. *See* United States v. Raines, 362 U.S. 17, 24, 80 S.Ct. 519, 524, 4 L.Ed.2d 524 (1960), and cases there cited in n. 5. For several years the question of whether due process requires the appointment of counsel in cases like the instant ones has been a recurring matter in Maryland trial courts. *See, e.g.,* Chase v. Chase, *supra.* The question has been of major concern to the trial judges of this State. Under our statutory mandate to issue a writ of certiorari if review by this Court "is desirable and in the public interest," Code (1974, 1980 Repl. Vol.), § 12-203 of the Courts and Judicial Proceedings Article, we issued a writ of certiorari solely for the purpose of deciding the recurring constitutional right to counsel issue. In light of this Court's recent decision in Elzey v. Elzey, 291 Md. 369, 435 A.2d 445 (1981), the non-constitutional issue discussed in Part II A would not, by itself, have justified the issuance of a writ of certiorari prior to a decision by the Court of Special Appeals.

port payments in February and "early" March 1982. Although the separation agreement was in effect at this time, the first court order requiring support payments was the divorce decree of March 23, 1982. Mr. Rutherford's breach of the separation agreement in February and early March could not properly constitute contempt of the court's March 23rd order.

> *Judgments of the Circuit Court for*
> *Anne Arundel County reversed.*
> *Appellees to pay costs.*

*Murphy, C.J., concurring in part and dissenting in part:*

I fully agree with Part II A of the Court's opinion that in these civil contempt cases incarceration of the contemnors was patently illegal under *Elzey v. Elzey,* 291 Md. 369, 435 A.2d 445 (1981), since the evidence plainly disclosed that the defendants lacked the present financial ability to comply with the support orders. As the majority opinion states, *Elzey* is wholly dispositive of both cases and mandates that the orders of the trial courts directing the confinement of the defendants must be reversed.

Because it is completely unnecessary to go beyond *Elzey* in disposing of these cases, I dissent from Part II B of the Court's opinion which advances an alternative constitutional ground for reversal of the trial courts' orders, namely, that "under the Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights, an indigent defendant in a civil contempt proceeding cannot be incarcerated unless he has been afforded the right to appointed counsel." While I have no quarrel with a policy that would require the appointment of counsel for an indigent as a prerequisite to actual incarceration for violation of a support order, it is by no means clear-cut that the State and Federal Constitutions compel that result in all such cases, regardless of the circumstances. The due process right of indigents to appointed counsel in civil cases involving an actual loss of liberty is not

absolute but depends upon a balancing of interests, *i.e.,* the private interests at stake, the government's interest, and the risk that the procedures used will lead to an erroneous decision. *See Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981); *Mathews v. Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). In other words, since due process is a flexible concept, a case-by-case evaluation is necessary to determine whether fundamental fairness requires the appointment of counsel in a case where an indigent contemnor is incarcerated for failure to satisfy a support order. Some courts have so held. *See, e.g., Duval v. Duval,* 114 N.H. 422, 322 A.2d 1 (1974); *State ex rel. Dept. of Human Services v. Rael,* 642 P.2d 1099 (N.M. 1982). In a similar vein, the Supreme Court has held that there is no inflexible constitutional rule granting an absolute right to counsel in cases involving indigents in parole and probation revocation hearings where incarceration actually resulted. *See Gagnon v. Scarpelli,* 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973).

A number of the cases relied upon by the majority in support of its unnecessary constitutional analysis involve contempt of court orders, other than civil nonsupport orders, where legal issues of some complexity were involved in defending against the contempt citation. Unlike those cases, the only issue in cases of civil contempt of a nonsupport order is whether the respondent has the present financial ability to make the required payment; if not, *Elzey* flatly prohibits incarceration, a legal principle now well grounded in the law of this State. In any event, that counsel would be required in all such cases to satisfy the demands of due process under the *Lassiter* and *Eldridge* balancing of interests tests is, to me at least, far from clear.

It is, therefore, inexplicable to me that the majority would in this case violate the Court's "established policy of not deciding constitutional questions unless necessary." *Town of Forest Heights v. Frank,* 291 Md. 331, 336, 435 A.2d 425, 428 (1981). Cases in support of this time-honored and fundamental proposition are, of course, legion. *See, e.g.,*

*Avara v. Baltimore News American,* 292 Md. 543, 554 n. 7, 440 A.2d 368, 373 n. 7 (1982); *Employ. Sec. v. Balto. Lutheran H. S.,* 291 Md. 750, 754 n. 2, 436 A.2d 481, 484 n. 2 (1981); *Temoney v. State,* 290 Md. 251, 259 n. 6, 429 A.2d 1018, 1022 n. 6 (1981); *Scott v. State,* 289 Md. 647, 651, 426 A.2d 923, 926 (1981); *Simms v. State,* 288 Md. 712, 725, 421 A.2d 957, 964 (1980); *Kent v. State,* 287 Md. 389, 393, 412 A.2d 1236, 1238 (1980); *Hillard v. State,* 286 Md. 145, 150 n. 1, 406 A.2d 415, 418 n. 1 (1979); *State v. Raithel,* 285 Md. 478, 484, 404 A.2d 264, 267 (1979); *State v. Friedman,* 283 Md. 701, 708 n. 5, 393 A.2d 1356, 1360 n. 5 (1978); *Comm'r of Labor & Ind. v. Fitzwater,* 280 Md. 14, 19, 371 A.2d 137, 140 (1977); *Caplan Bros. v. Village of Cross Keys,* 277 Md. 41, 45-46, 353 A.2d 237, 240 (1976); *Prince George's Co. v. Laurel,* 262 Md. 171, 187, 277 A.2d 262, 270 (1971); *Tyler v. State,* 93 Md. 309, 314, 48 A. 840, 842 (1901); *State v. Insley,* 64 Md. 28, 30, 20 A. 1031 (1885).

As I would rest the reversal in these cases exclusively on the *Elzey* nonconstitutional ground, I do not join in Part II B of the majority opinion.