476 A.2d 213

**Joe F. DISHMAN**

v.

**Betty J. DISHMAN.**

**No. 1425, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

June 11, 1984.

Elise Davis, Chestertown, for appellant.

No brief or appearance by appellee counsel.

Argued before GARRITY, ALPERT and BELL, JJ.

BELL, Judge.

As an aftermath of a divorce granted in the Circuit Court for Cecil County, the alimony awarded as a part of that divorce fell into arrears. Joe Dishman appeals two decisions of that court, holding him in contempt for his failure to make the ordered payments and asks us to respond favorably to these questions:

1. Was the Appellant denied due process of law by not being apprised of his right to counsel including the availability of the public defender for the hearings seeking to hold him in contempt of Court on July 22nd, 1983, September 8th, 1983 and September 15th, 1983.

2. Were the findings that the Appellant was in contempt of Court, by the Orders of October 17th, 1983, and October 21st, 1983, clearly erroneous in view of the evidence that the Appellant did not then have the ability to pay the alleged arrearages.

3. Was the denial of Appellant's request to reduce the amount of alimony clearly erroneous in view of the fact that the Appellant's evidence, which was uncontroverted, was that his income was not sufficient to make payments at the rate of One Hundred and Fifty Dollars ($150.00) per week?

4. Was the Appellant denied due process of law by the failure of the trial court to have a record made of the proceedings on September 15th, 1983, in accordance with Rule 1224 of the Maryland Rules of Procedure?

5. Was the Appellant denied due process of law by his failure to have a record made of the proceedings of September 15th, 1983 that would have allowed an appellate court to determine whether he had made a knowing and intelligent waiver of the right of counsel, and whether or not he had in fact been advised that he had the right to appointment of a public defender if he could not afford an attorney?

The questions, while fairly presented, require some perspective before they can be addressed. We proceed first to the facts necessary before we can attempt to ascertain that perspective.

## HISTORY

Joe F. Dishman and Betty J. Dishman were divorced in December, 1982. Mrs. Dishman was awarded alimony in the amount of One Hundred Fifty Dollars ($150.00) a week starting December 24, 1982.[1] A later order entered a monetary award for her in the amount of Eighteen Thousand Four Hundred Dollars ($18,400.00). During the spring of 1983 there were two or three rulings which held Mr. Dishman in contempt. He purged himself of those contempt orders, allegedly with borrowed funds. On or about April 1, 1983, payments were directed to be made through the Family Support services of the Circuit Court of Cecil County.

---

**1.** We note that the Divorce Decree contains no reference to how long the alimony will continue, but that issue is not before us.

*The Hearing of July 22 and September 8, 1983*

Mrs. Dishman filed a petition to have Mr. Dishman held in contempt for arrearages accruing from January 28 through March 26th, 1983, plus attorneys fees. Mr. Dishman countered with a request for a modification of the amount of support.

Both petitions came on for hearing on July 22, 1983. The court heard testimony on that day and continued the case to September 8 to allow Mr. Dishman to call a C.P.A. to further explain his financial situation.

There is no record in the docket entry of July 22, or the continued date of September 8, of any advice to Mr. Dishman on his right to counsel or his right to have counsel appointed if he was indigent. There is no indication that there was a waiver of counsel. The transcript is totally devoid of any reference to advice of the right to counsel. Mr. Dishman was not represented by counsel on either date, although he did have a friend with him who testified on his behalf.

The court found Mr. Dishman in contempt, entered a judgment in favor of Mrs. Dishman for $800.00 and denied the motion to reduce.[2]

Interestingly enough while the court held Mr. Dishman in contempt it did not order incarceration on that petition.

## The Hearing of September 15, 1983

Meanwhile another petition for contempt from the Family Support Division, which would have different consequences, was working its way toward a hearing to be held just one week later. There is a docket entry on that date which reads as follows:

> September 15, 1983—Hearing held.... Resp. advised of his right to an attorney—waived attorney. Finding: In

---

2. The court had awarded a judgment for attorney's fees of $500.00 at the July 22 hearing.

Contempt. Committed to the Cecil Co. Jail for 179 days or make arrangements. Live in work out granted.

We have no transcript of that hearing. We learn from a later "order"[3] in the record that the arrearage was found to be $1,530 as of August 26, 1983. Mr. Dishman was given "the opportunity to purge himself and [sic] which he did by paying $735.00 on September 21, 1983 and was released from jail on the condition he would pay the balance due within ninety (90) days."

Mr. Dishman secured a lawyer. An order was signed on October 17 delineating the results of the September 8 decision. The court entered an "order" on October 21, in response to the request of Mr. Dishman's attorney, setting forth the background of the case and spelling out the holding and decision made on September 15. Timely appeals were noted to the October 17 and October 21 orders.

An orderly response would be to proceed with each of Mr. Dishman's questions seriatim; however, there is a threshold issue which must be addressed. Mr. Dishman went to jail as a consequence of the September 15 hearing at which he was not represented by counsel.

## LAW

The Court of Appeals of Maryland through Judge Eldridge in *Rutherford v. Rutherford*, 296 Md. 347, 363, 464 A.2d 228 (1983) stated:

[U]nder the Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights, an indigent defendant in a civil contempt proceeding cannot be sentenced to incarceration unless he has been afforded the right to appointed counsel.

In *Lee v. State*, 56 Md.App. 613, 623, 468 A.2d 656 (1983), Judge Alpert quoted this holding and added:

---

**3.** This was the order of October 21, 1983.

Thus, it is firmly established that a defendant is entitled to representation by counsel in a civil contempt proceeding if he is to be sentenced to a period of incarceration.

Judge Eldridge earlier in *Rutherford, supra* at 360–361, 464 A.2d 228 opined: "A defendant's actual incarceration in a jail, as a result of a proceeding at which he was unrepresented by counsel and did not knowingly and intelligently waive the right to counsel is fundamentally unfair."

Our analyses and responses to Mr. Dishman's questions must be based on an independent review of the record, Rule 1086, but we have no transcript of the September 15th hearing.

■ It was the responsibility of Mr. Dishman to include in the record a "transcript of all the testimony," Md.Rule 1026 a 2, as well as all other matters and issues which he desires this Court to review on appeal to support his contention that any attorney waiver was not knowingly or intelligently made. *See White v. State,* 8 Md.App. 51, 258 A.2d 50 (1969).

■ On the other hand, the docket entry contains a reference to a waiver of counsel as does the order of the court of October 21. While these notations are conclusory and omit all reference to whether the waiver was knowing and intelligent, they would ordinarily suffice as it is Mr. Dishman's obligation to provide the transcript. We do have, however, a copy of a letter from the Official Court Reporter dated October 11, 1983 in response to a letter from counsel for Mr. Dishman in which she states "our records indicate the hearing of September 15, 1983, was not recorded." This letter is, of course, not a part of the record, but there is no listing of a court reporter in the docket entry of September 15, and this response does explain that omission. We are adamant in our criticism of the practice of holding hearings without some facilities for preserving the testimony. Mr. Dishman gives us his version of the September 15

hearing by an affidavit outside the record.[4] It is not appropriate for us to utilize this as the basis of our review.

■ The proper procedure for Mr. Dishman to have followed was a motion to correct the record as provided by Maryland Rule 1027 b, and the failure to so proceed is ordinarily fatal. *White v. State, supra.*

The Court of Appeals was presented with an analogous situation in *King v. State Roads,* 284 Md. 368, 396 A.2d 267 (1979). In that case it was conceded that the jury panel was improperly presented to counsel for peremptory challenges. An array of 28 was called. After the voir dire was completed three prospective jurors were excused. The court presented the parties with a panel of 25 from which to take four strikes each. As a result the court retained 5 strikes. At a motion for a new trial, the court agreed that the method used violated the Maryland Rules; however, the court did not agree that counsel for King had objected before the selection process was completed. If he had not, the objection was waived. If the challenge was made, it occurred during an unrecorded bench conference. The Court of Appeals held that if timely objection was made to the method used, the only appropriate action was to grant a new trial; but the Court was faced, as we are here, with no transcript to review and no motion to correct the record. Beginning at page 373, 396 A.2d 267 *et seq.,* in the *King* case Judge Digges opined:

> We have previously recognized that if a party thinks the record in this Court is incomplete or incorrect, the proper remedy is to file a motion here under Rule 826 f to correct that record. *Harmon v. State,* 227 Md. 602, 607, 177 A.2d 902, 905 (1962). The Kings have not explicitly

---

4. Mr. Dishman averred that the court "advised everyone present that if anyone appeared without an attorney he would conclude that that individual had waived his right to be represented by counsel" and that "nothing else was said about the right to counsel." If he is correct, and there is nothing more, we would not hold this a knowing, intelligent and voluntary waiver.

made such a motion, but we think that when, as here, the record is incomplete through no apparent fault of the appealing party and there is some indication in the record that tends to support that party's assertion that, in fact, a timely objection was made, 'the purposes of justice will be advanced by permitting further proceedings in the cause' to determine the issue, Md.Rule 871, and thus we will treat petitioners' assertions as a Rule 826f motion and remand the case, as is provided in Rule 826c, for certification by the trial court as to what occurred. (Footnotes omitted).

■ Turning then to the case *sub judice,* Md.Rules 1027 b, 1071 and 1026 c for proceeding in the Court of Special Appeals are the counterparts of Rules 826 f, 871 and 826 c for the Court of Appeals. Admittedly the record is incomplete but through no apparent fault of Mr. Dishman. In the docket entry and in the court's order of October 21, there was no finding that the waiver was knowing and intelligent. This lends some support to Mr. Dishman's allegation that he did not intelligently, voluntarily and knowingly waive his right to counsel. We find in this case as did the Court in *King, supra,* that "the purposes of justice will be advanced by permitting further proceedings in the cause" to determine the issue. Md.Rule 1071, and we will similarly treat Mr. Dishman's assertion as a Rule 1027 b motion and remand the case, as is provided in Rule 1071 for certification by the trial court as to what transpired. Md.Rule 1026 c.

We direct as did the court in *King v. State Roads, supra,* that

[o]n remand, if, after considering the record, the arguments of counsel, any trial notes he retained, or any other legitimate source, the trial judge's recollection is refreshed to the extent that he can certify as to what occurred...

and as a result make a finding as to whether there was an intelligent, voluntary and knowing waiver that he proceed

to do so. If he finds there was, he should certify the facts to us so that we can review the case as provided under Maryland Rule 1086. On the other hand, if he finds there was not such an intelligent and knowing waiver, a new hearing should be provided.

If, again as directed in *King, supra,* he is unable to reach a conclusion as to whether an intelligent, knowing and voluntary waiver was made, then in that event, a new hearing should be conducted.

The other contentions raised by Mr. Dishman may well become moot, if the trial court determines that a new hearing is appropriate. We do not and will not speculate on the outcome of our remand.

CASE REMANDED TO THE CIRCUIT COURT FOR CECIL COUNTY, WITHOUT AFFIRMANCE OR REVERSAL, FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID BY CECIL COUNTY IN THE EVENT, ON REMAND, A NEW TRIAL IS AWARDED; OTHERWISE TO BE PAID BY PETITIONER.