659 A.2d 325

Ronald Lee REED

v.

Delores L. FOLEY.

Scott Carle CRAIG

v.

Martha A. GLASS

Nos. 1387, 1390, Sept. Term, 1994.

Court of Special Appeals of Maryland.

June 5, 1995.

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellants.

Angela M. Eaves, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellees.

Argued before WILNER, C.J., and ALPERT and MURPHY, JJ.

MURPHY, Judge.

These appeals from the Circuit Court for Carroll County present a challenge to that court's procedures for collecting overdue child support payments. Appellants Scott Carle Craig and Ronald Lee Reed have framed two questions for our review:

**I. Whether the procedures followed in the court below violated appellant's right to due process of law and the assistance of counsel as well as the Maryland Rules.**

**II. Whether the court below erred in ordering appellant's incarceration and conditioning his release upon the payment of (the amount alleged to be overdue)[1] where there was no showing of past or present contempt nor that he had the present ability to pay.**

In support of the procedure at issue, appellees, Martha A. Glass and Delores L. Foley present the following question:

**I. Did the trial court properly find that appellant failed to make child support payments and properly issue a body attachment and impose a bond to be applied towards appellant's child support arrearage?**

---

1. In Craig's case the amount was $650.00. In Reed's case the amount was $600.00.

### Factual Background

(1) *The Craig case:*

Craig is the father of Glass' child. When Glass began to receive public assistance she assigned her claim for child support to the Carroll County Department of Social Services. At the request of that agency, the Bureau of Support Enforcement, represented by the Carroll County State's Attorney's Office, initiated support payment proceedings. On December 17, 1987, Craig signed a consent order in which he agreed to pay a biweekly sum of $25.00 for "support and maintenance" of his son.

In a Complaint for Contempt and Incarceration, filed on February 12, 1991, it was alleged that

2. That [appellant], has failed and refused to pay said sum, and there is now due [appellee] by [appellant] the sum of $2940.74 as of January 4, 1991, which the [appellant] refuses to pay though fully able to pay the same.

3. That [appellant] did not report any changes in employment or a residence within ten (10) days to the Court or to the Bureau of Support Enforcement as stated in Paragraph # 3 of the Court Order dated the 6th day of January 1987. The [appellant] has subjected himself to a $250.00 fine.

The "WHEREFORE" clause of this complaint requested that:

1) [Appellant] be attached for Contempt of this Honorable Court in not obeying the Order of Court aforesaid,

2) The Court incarcerate the [appellant] for Contempt, and

3) The Court issue an Earnings Withholding Order.

On February 28, 1991, the court entered a show cause order requiring that

... [Appellant] be and appear in this Court on the 22nd day of May, 1991 ... and show cause, if any he ... may have, why he ... should not be attached for contempt as above set forth, and why the relief prayed should not be granted....

That order mentioned nothing about appellant's right to counsel. It did, however, contain the following advice:

PLEASE NOTE: IF YOU ARE REPRESENTED BY COUNSEL, YOU MAY APPEAR ONE HOUR LATER. IF YOU WISH TO DISCUSS THE CASE PRIOR TO THE HEARING, YOU MAY CONTACT THE STATES'S ATTORNEY'S OFFICE.

On June 3, 1991, Craig signed a consent order that stated:

**That should [appellant] fail to make five regularly scheduled payments, *when due,* as ordered, [appellant] will be subject to having a Body Attachment issued for his ... arrest, upon notice to [appellant] by mail, at his ... last known address, that [appellant] has failed to make said payments and that a hearing will be held on a given specific date for the purpose of requesting said Body Attachment.** (emphasis in original).

Craig appeared *pro se* at a May 27, 1992, "review hearing," held before a master who did not ask Craig why he was unrepresented. At the conclusion of the hearing, the master made the following findings and recommendations:

The [appellant] was to make a lump sum payment of $550.00 not later than 5/27/92 ...

Payments were received on 5/21/92 $50.00; 5/13/92 $175.00 ...

Other findings: On 1/22/92 arrearage was $3060.74 so it has been reduced. He is still $625.00 higher than he should be. There is a pending payment by wage lien of $137.00 ...

[Appellant was] fired on 5/26/92 after an altercation with his girlfriend, he will apply for unemployment today.

[Appellant is] ordered to pay child support in the amount of $25.00 per week.

[It is recommended that appellant] be ordered to make payments toward the arrearage of $2685.74....

Review Hearing to be held on 10/28/92.

The October 28, 1992 review hearing proceeded in the same fashion. Craig appeared *pro se.* He was not advised of his

right to counsel. The master made written findings and recommendations that stated in pertinent part:

The arrearage as of the date of this hearing is $2961.74 which is $1451.00 higher than it should be to be in compliance.

The [appellant] concurs with the arrearage amount.

A wage lien is ordered; it will operate, because the [appellant] is now employed.

The [appellant] was to make a lump sum payment of $625.00, not later than 10/15/92; it was not paid.

Last payment was received on 10/20/92, in the amount of $50.00. There were three wage lien payments made in June and one in August.

[It is recommended that appellant] continue to be ordered to pay current child support in the amount of $25.00 per week ... [and] continue under a missed payment provision; if [appellant] fails to make 4 regularly scheduled payments, [he] is subject to having a body attachment issued after being notified by mail at the last known address of a hearing to be held for purpose of requesting a body attachment ...

On January 26, 1994, the Bureau of Support Enforcement filed a Complaint to Increase Child Support. On February 15, 1994, Craig was served with two summonses. One summons advised him that, although he was not required to file a written response to the complaint, he was required to attend a hearing scheduled for April 13, 1994. The second summons, however, "**COMMANDED**" Craig to "personally appear and produce documents or objects" in the Circuit Court on April 13, 1994 at a 1:00 P.M. Master's Hearing.

Craig appeared *pro se* at the hearing. The master neither advised him of his right to counsel nor made a finding on the issue of his ability to pay. The master did, however, recommend that a body attachment be issued for appellant with cash bond set in the amount of $650.00.

On April 15, 1994, Craig through counsel, filed exceptions that included the following contentions:

That the Court is without authority to imprison the [appellant] pursuant to the recommended Body Attachment for failing to pay child support without a finding that such failure amounted to contempt; and then, any order for imprisonment must contain a purging condition for which the [appellant] has the ability to comply....

[Appellant] is entitled to a lawful bond. A "nonrefundable bond" is not a bond as defined in Maryland Rule 4–217.

Craig was represented by counsel at an August 19, 1994, exceptions hearing.[2] His counsel did not challenge any factual findings, but argued that the collection procedure to which Craig had been subjected

... is a form of definite commitment.... There is no purging condition attached, which is required by law.... There is no finding ... that he has the ability to meet the purging condition.

\* \* \* \* \* \*

Your Honor, the Court is without authority to imprison someone on a finding by a Master that he missed payments ... My client's going to jail without any contempt finding ... there's no charge of contempt, much less a finding.

Appellee's counsel responded:

The Complaint for Contempt was filed, originally, on February 11, 1991, in this case, and, in fact, the missed payment provision was in a Consent Order ... I really don't think that this is unfair at all. We were just having him held accountable for the time in which he was able to work ...

The court decided to "deny [appellant's] exceptions ..." It signed the proposed Order for Body Attachment. A Body Attachment was issued on August 22, 1994 and Craig was arrested two days later. Bond was posted on August 31, 1994.

─────────

**2.** The record does not show that Craig was present at this hearing.

(2) *The Reed case:*

Reed and Foley were once husband and wife. Subsequent to their divorce, Foley began to receive public assistance and assigned her claim for child support to the Carroll County Department of Social Services. At the request of that agency, the Bureau of Support Enforcement, represented by the Carroll County State's Attorney's Office, initiated support payment proceedings. On December 17, 1990, Reed signed a consent order in which he agreed to pay a bi-weekly sum of $60.00 for "support and maintenance of" his son.

In a Complaint For Contempt And Incarceration, filed on December 17, 1991, it was alleged that

... [appellant] has failed and refused to pay said sum, and there is now due [appellee] by [appellant] the sum of $1050.00 as of September 13, 1991 which the [appellant] refuses to pay though fully able to pay the same.

... [appellant] did not report any changes in employment or a residence within ten (10) days to the Court or to the Bureau of Support Enforcement as stated in Paragraph # 3 of the Court Order dated the 11th day of December, 1990. The [appellant] has subjected himself to a $250.00 fine.

The "WHEREFORE" clause of this complaint requested that:

1) [Appellant] be attached for Contempt of this Honorable Court in not obeying the Order of Court aforesaid,

2) The Court incarcerate the [appellant] for Contempt and,

3) The Court issue an Earning's Withholding Order.

On January 8, 1992, the court entered a show cause order requiring that

... [appellant] be and appear in this court on the 20th day of May 1992 ... and show cause, if any he ... may have, why he ... should not be attached for contempt as above set forth, and why the relief prayed should not be granted ...

That order mentioned nothing about Reed's right to counsel. It did, however, contain the following advice:

PLEASE NOTE: IF YOU ARE REPRESENTED BY COUNSEL, YOU MAY APPEAR ONE HOUR LATER THAN THE TIME INDICATED ABOVE. IF YOU WISH TO DISCUSS THE CASE PRIOR TO THE HEARING, YOU MUST CONTACT THE NON SUPPORT UNIT OF THE STATES ATTORNEY'S OFFICE ...

Reed attended the May 20, 1992 hearing, held before a master who did not ask him why he was appearing pro se. At the conclusion of the hearing, the master made the following written factual findings and recommendations:

The arrearage as of the date of this hearing is $2,100.00.

There have only been 2 payments since Jan. 1991–$30.00 on 1/31/92 and $120.00 on 5/28/91. [Appellant] is unemployed; a letter from his atty ... confirms a work related injury from 1990.... He could have returned to his former job, but because of transportation problems, was terminated. He tried to work at McDonald's but couldn't lift boxes....

[It is recommended that appellant] be ordered to pay child support for each child in the amount of $60.00 bi weekly ... [and] ordered to make payments towards the arrearage of $2,100.00 in the amount of $20.00 bi weekly ... (and) ordered to make a lump sum payment of $500.00 by 9/23/92. Review Hearing to be held on 9/23/92 ... three missed payments will subject [appellant] to notice of body attachment hearing. Parties waived right to exceptions....

Reed attended the September 23, 1992 review hearing that was also held before the master, who included the following statement in his written findings and recommendations:

... [Appellant] claimed he started working on a farm earning $120.00 a week running farm equipment and doing farm work for other farmers. The [appellant] receives a $288.00 bi-weekly disability payment which may end in February of 1993. [Appellant is] ordered to make a lump sum payment of $1,180 by January 20, 1993.... Parties waived right to exceptions, and agree to entry of immediate order.

The January 20, 1993 review hearing proceeded in the same fashion. Reed appeared pro se. He was not advised of his right to counsel. The master made written findings and recommendations that stated in pertinent part:

[Appellant is] ordered to make a lump sum payment of $1,000 by June 16, 1993 at which time a Review Hearing will be held at 9:00 am. The purpose of the hearing is to monitor the lump sum and [appellant's] employment status. Parties waived right to exceptions, and agree to entry of immediate order.

Reed received a March 25, 1993 letter from an Assistant State's Attorney that advised as follows:

In the above captioned case, on January 20, 1993, the Court passed an Order containing a provision which subjects you to a Body Attachment, after notice to you of a hearing if you failed to make 3 regularly scheduled payments after January 20, 1993. According to the Bureau of Support Enforcement, you have missed your 3 regular payments. As a result of your having failed to make said payments, a hearing has been scheduled for Wednesday, April 21, 1993. . . .

You are not required to attend the hearing scheduled on April 21, 1993, but if you wish to contest lack of payments and the issuance of a Body Attachment, you may want to appear to present your evidence to the Court at the hearing. However, the issue of the missed payments and the request for the Body Attachment for your arrest will be addressed by the Court with or without your presence at the hearing. Additionally, if, prior to the hearing, you make up the missed payments and present proof of that to our office in advance of the hearing, we may consider not pursuing the request for a Body Attachment.

Reed's next hearing took place on June 16, 1993 [3] before a master. Once again, he appeared pro se. Once again, he was

---

**3.** The April 21, 1993 hearing was canceled. The record does not indicate why.

not advised of his right to counsel. The written findings and recommendations made at the conclusion of that hearing stated in pertinent part:

[It is recommended that appellant] be ordered to make lump sum payment of $1170.00 by October 27, 1993, at which time a review hearing will be held ... Findings and recommendations were announced at close of hearing.

At the conclusion of the October 27, 1993 hearing, conducted in the same fashion as the prior proceedings, the master made the following pertinent findings and recommendations:

The arrearage as of the date of this hearing is $3,112.00, which does not give credit for a payment of $1,170 paid today by check. The arrearage, with credit for that payment, is still $372.00 higher than it should be to be in compliance.

[It is recommended that appellant] be ordered to make a lump sum payment of $372.00 by April 27, 1994, at which time a review hearing will be held....

On March 9, 1994, an Assistant State's Attorney wrote a letter to Reed that stated in pertinent part:

This is to advise you that, according to our records, you have failed to make at least three (3) payments. In addition, a Missed Payment Hearing has been scheduled for April 27, 1994 at 9 a.m. At this hearing, the Court will be requested to issue a Body Attachment for your arrest since you failed to make the required payments.

That letter made no mention of Reed's right to counsel. He appeared *pro se* on April 27, 1994. The master neither advised him of his right to counsel nor made a finding on the issue of his ability to pay. The Master did, however, recommend a body attachment with a non-refundable cash bond of $600.00 to be applied against any child support arrearage. Later that day Reed filed exceptions that included the following contentions:

1. That the Court is without authority to imprison [appellant] pursuant to the recommended Body Attachment for failing to pay child support without a finding that such

failure amounted to contempt; and then, any order for imprisonment must contain a purging condition for which the [appellant] has the ability to comply.

2. That [appellant] is entitled to a lawful bond. A "nonrefundable bond" is not a bond as defined in Maryland Rule 4–217.

Reed was represented by counsel at an August 19, 1994 exceptions hearing.[4] His counsel did not challenge any factual findings, but argued that the collection procedure to which Reed had been subjected

... violated almost all the rights of due process.... In ... civil contempt matters, there must be a purging condition placed on someone's commitment. In this particular situation and others that have gone before it, [when] individuals are arrested ... they wait in jail. There is no way to get out except to pay what is ... an illegal bond.

\*　　\*　　\*　　\*　　\*　　\*

... [I]t's not a bond; it is ... a commitment without a purging condition, without a release date.

\*　　\*　　\*　　\*　　\*　　\*

You know, it sounds like, looks like and smells like contempt, but yet its's being called missed payment. If it had been called contempt, you would have the right to counsel ...

Appellee's counsel responded:

First of all, this is not a contempt proceeding. The contempt proceeding has already been held. The missed payment provision and the missed payment procedure is a purge provision for the original contempt proceeding. He was originally charged with contempt in this case on December 17 of 1991 where the Complaint for Contempt was filed and subsequently, an Order was issued imposing the three missed payment provision on May 20 of 1992. So, my argument would be, in responding to the Exceptions, that

---

4. The record does not show that Reed was present at this hearing.

the challenge to this missed payment provision is a little bit late.

The court decided to "dismiss the exceptions and . . . sign the order of April 27th 1994." As a result of that ruling, a body attachment was issued on August 22, 1994. Reed was arrested seven days later.

## Discussion

### I

Appellants argue that the procedure that resulted in their incarcerations violated the due process clause of the Fourteenth Amendment to the United States Constitution, the due process clause of the Maryland Declaration of Rights, and the Maryland Rules of Procedure.[5] We agree. Appellants were subjected to a process that (1) violated the right to counsel, and (2) used the "body attachment" (with a "non-refundable cash bond" feature) to circumvent the contempt rules.

### A. The Right to Counsel

 The Court of Appeals has made it clear that "an indigent defendant in a civil contempt proceeding cannot be sentenced to incarceration unless he has been afforded a right to appointed counsel." *Rutherford v. Rutherford,* 296 Md. 347, 363, 464 A.2d 228 (1983). Appellees contend that *Rutherford* does not apply because (1) each appellant was ultimately represented by counsel at his August 19, 1994 exceptions hearing; and (2) neither appellant was subjected to a P Rule civil contempt proceeding. There is no merit in either contention. The August 19, 1994 exception hearing was more like an appeal than a trial. Indeed, the constitutionality of the process was the only issue discussed. Denial of one's right to

---

5. Neither appellant is presently incarcerated. Appellees, therefore, argue that this case is moot. We disagree. This matter involves an issue that "may frequently recur, and which, because of inherent time constraints, may not be able to be afforded complete appellate review." *Attorney General v. Anne Arundel Sch. Bus Contractors Ass'n,* 286 Md. 324, 328, 407 A.2d 749 (1979).

counsel at trial is not cured by the appearance of counsel on appeal.

At each of the hearings that took place before masters, factual findings were made regarding the appellant's ability to comply with the order to which he had previously consented. At none of those hearings was either appellant advised of his right to counsel.[6] A party's right to counsel—and the court's duty to protect that right—does not depend on what name the authorities give to the proceeding, but rather on the consequence of an adverse finding at that proceeding. *Jones v. Johnson,* 73 Md.App. 663, 667, 536 A.2d 116 (1988).

In each of these cases, the findings made by the master are "findings of fact entitled to deference under the clearly erroneous rule." *Domingues v. Johnson,* 323 Md. 486, 496, 593 A.2d 1133 (1991). In each of these cases, therefore, a master's finding would—if adverse to the appellant—place appellant in jeopardy of being confined for violating an order of court. At every stage in the process at issue, each appellant was entitled to proper advice of his right to counsel.

### B. The Right to a Process That Complies With the P. Rules [7]

■ Rule P 4 contains important safeguards that cannot be denied to a party by changing the name of the proceeding. The person who has allegedly violated an order of court is entitled to (1) formal notice of the precise violation alleged, (2) an opportunity to be heard on the merits of that issue, and (3) the right to counsel if confinement is the sanction to be imposed for the violation. The procedures at issue in these cases do not comply with those requirements.

---

6. An Assistant State's Attorney represented the Support Enforcement Unit at each hearing.

7. Remedial proceedings to compel obedience of court orders are governed by Chapter 1100 of the Maryland Rules of Procedure, Subtitle P. Contempt.

■ The March 25, 1993 letter to Reed did not advise him of his right to counsel. That letter was anything but "the essential facts constituting the contempt charged" as required by Rule P4(b)(1)(b). It merely stated that appellant had missed three payments. It did not specify the dates that were missed or the amount that was due. Moreover, the letter was misleading in that it (1) understated the importance of his presence at a proceeding that could result in the issuance of an order for his confinement, (2) implied that appellant would have no right to ask for a continuance, and (3) implied that the appellant could be subjected to a body attachment even if he paid in full.

Neither summons that Craig was served with on February 15, 1994 advised him of his right to counsel. The April 27, 1994 proceedings before the master did not comply with the P. Rules. No show cause order was issued by the court advising appellant of the precise charges and of his opportunity to be heard.

## C. The Right to Protection From a Body Attachment

■ Appellees contend that Rule 1–202 is a separate procedure that may be used to enforce child support obligations. We disagree. Rule 1–202(c) provides:

(c) **Body Attachment**— ... means a written order issued by a court directing a sheriff or peace officer to take custody of and bring before the court (1) a witness who fails to comply with a subpoena, (2) a material witness in a criminal action, or (3) a party in a civil action who fails to comply with an order of court.

The words "and bring before the court" make it clear that the rule was designed to compel a party's physical presence in the courtroom. An individual who has failed to pay child support is not subjected to this rule unless there has been a failure to appear at a proceeding. No such problem existed in either of these cases.

■ Each body attachment issued in these cases contained a "non-refundable cash bond." It is well established that

"[t]he purpose of bail is to assure the attendance of the accused at the trial." *Simmons v. Warden,* 16 Md.App. 449, 450, 298 A.2d 199 (1973). A non-refundable bail credited toward an arrearage violates this principle.[8]

## II

... [A] person found to be in civil contempt cannot be assigned the burden of proving his or her inability to comply with the purging provision.... An affirmative finding that the contemnor is presently able to comply with the purging provision cannot be based solely on the judge's disbelief of the contemnor's claim of inability to comply.

*Lynch v. Lynch,* 103 Md.App. 71, 82, 652 A.2d 1132 (1995) (citations omitted).

In these cases, neither the master nor the circuit court made a finding that either appellant had the present ability to pay the amount of the "non-refundable cash bond." The bond, therefore, constituted an invalid purging provision. Further proceedings to collect child support payments must comply with the principles established by *Rutherford, Lynch,* and Maryland Rule 4–215.

**JUDGMENT REVERSED IN EACH CASE; APPELLEES TO PAY THE COSTS.**

---

8. The procedure also violates Rule 4–212, which expresses a preference for a summons. If the defendant is not in custody, a warrant shall be issued only when "the court finds that there is a substantial likelihood that the defendant will not respond to a summons." Rule 4–212(d)(2).