718 A.2d 668

**Thomas W. REDMOND**

v.

**Sandra C. REDMOND.**

**No. 1928, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Oct. 2, 1998.

Michael Demyan (Bittner and Demyan, on the brief), Glen Burnie, for appellant.

No brief or appearance by appellee's counsel.

Argued before MURPHY, C.J., and PAUL E. ALPERT, Judge (retired, Specially Assigned), and RICHARD R. BLOXOM, Judge (Specially Assigned).

PAUL E. ALPERT, Judge, Retired, Specially Assigned.

Appellee, Sandra C. Redmond ("Mrs. Redmond"), filed a petition in the Circuit Court for Anne Arundel County seeking to hold appellant, Thomas W. Redmond ("Mr. Redmond"), in civil contempt for his alleged failure to comply with the terms of a divorce judgment (i.e., to refinance certain loans on real property). After a hearing, the court found Mr. Redmond in contempt of court, and sentenced him to 90 days in jail; the court also ordered that the jail term be suspended, and allowed Mr. Redmond until September 15, 1997 to purge himself of the contempt by complying with the divorce judgment.

Mr. Redmond filed a timely notice of appeal. He also made an attempt to comply with the divorce judgment, but his efforts were complicated by a bankruptcy petition he had filed prior to the contempt hearing. Eventually, this Court stayed Mr. Redmond's sentence pending disposition of this appeal. For the reasons set forth below, we will reverse the judgment of the circuit court, and remand the case for further proceedings.

## ISSUES

Mr. Redmond raises six issues, which we reorder and rephrase:

I. Whether Mr. Redmond's failures under the divorce judgment are punishable by imprisonment.

II. Whether the contempt proceedings violated Mr. Redmond's right to the assistance of counsel.

III. Whether the contempt proceedings were conducted in violation of various provisions of Rule 15–206?

IV. Whether Mr. Redmond's violation of a property settlement agreement was punishable by contempt given the fact that he was in violation of the agreement at the time it was incorporated into a divorce decree?

V. Whether the contempt proceedings below were conducted in violation of the automatic stay provided by 11 U.S.C. § 362?

VI. Whether the circuit court erred when it found that Mr. Redmond had a present ability to comply with the purge provisions of the contempt order?

## FACTS

This case involves Mr. Redmond's failure to comply with the terms of a divorce judgment dated March 4, 1988. That judgment incorporated the terms of a property settlement agreement executed by Mr. and Mrs. Redmond on March 25, 1987. The agreement contained a provision that reads as follows:

The Wife covenants and agrees that she will grant and convey all of her right, title and interest in and to all of the other aforesaid properties to the Husband. The Husband further agrees that he will re-finance those loans for the aforesaid properties on which Wife is obligated, removing the Wife's name from any outstanding mortgages thereon, within four (4) months of the date of this Agreement, and that the Husband will indemnify and hold harmless the Wife from any claims arising therefrom. Upon the re-financing, the Wife will execute such Deed or other assurances as may be necessary to carry out and give effect to the foregoing provisions of this Paragraph.

One of the properties covered by this provision is located at 3503 Canal Street in Ocean City. Mr. Redmond failed to re-finance the loan on that property, and Mrs. Redmond remained liable for that loan.

On May 27, 1997, Mrs. Redmond filed a petition in the Circuit Court for Anne Arundel County seeking to hold Mr. Redmond in contempt for his failure to refinance the loan on the Ocean City property. In response to that petition, the court issued a show cause order, which reads as follows:

### *SHOW CAUSE ORDER*

On the foregoing Petition it is **ORDERED** by the Circuit Court for Anne Arundel County, this 30th day of May, 1997, that the Respondant [sic], **THOMAS W. REDMOND,** show cause on or before the 27th day of June, 1997, why he should not be found in contempt as above set forth, provided a copy of the above Petition and of this Order be served on the Defendant on or before the 13[sic] day of June, 1997.

That order contains a handwritten note at the bottom which reads, "HEARING DATE: July 11, 1997 at 9:30 a.m."

According to an affidavit of service that was later made a part of the record of this case, Mr. Redmond was served with the show cause order on June 16, 1997. Nevertheless, when the hearing was called on July 11, Mr. Redmond did not appear.

In response to Mr. Redmond's absence, the court issued, on July 11, a second show cause order, which reads:

### *SHOW CAUSE ORDER*

On the foregoing Petition, it is,

**ORDERED,** this 11th day of July, 1997, that the Defendant must personally appear on the 24th day of July, 1997, at 8:45 a.m. to show cause, if any he may have, as to why he should not be found in contempt as above set forth, provided a copy of the Petition and this Order be served on the Defendant on or before the 18th day of July, 1997. The Defendant must appear at the hearing. He is warned that his failure to appear may result in a body attachment.

Mr. Redmond was served with this order on July 16, 1997.

At the July 24 hearing, Mr. Redmond appeared *pro se,* and immediately asked for a continuance. He told the court that he had not been served with either show cause order until July 16, and was therefore unable to secure the services of his regular attorney (who was then engaged in a jury trial elsewhere); he also told the court that the previous day, he had filed for bankruptcy.

The court denied the continuance, citing the affidavit of service which showed that Mr. Redmond had been served with the initial show cause order on June 16. The court then heard testimony from Mrs. Redmond; and when Mr. Redmond declined to testify, the court found him in civil contempt of court, and scheduled another hearing for July 31, 1997 to determine appropriate sanctions.

On July 31, Mr. Redmond filed two pleadings: 1) a motion to reconsider the contempt finding; and 2) a notice of bankruptcy and motion to stay the proceedings. At the hearing, the circuit court denied both the motion to reconsider and the motion to stay. Counsel for Mrs. Redmond then asked, for the first time, that the court imprison Mr. Redmond to compel his compliance with the contempt order; and the court complied with that request, issuing the following order:

### ORDER OF COURT

The above-captioned cause having come on for hearing on [Mrs. Redmond's] Petition for Contempt and [Mr. Redmond's] Motion to Reconsider Judgment of Contempt, the parties having appeared with counsel and the Court having heard testimony, received exhibits and heard argument of counsel, it is this 7th day of August, 1997, by the Circuit Court for Anne Arundel County,

**ORDERED,** that the Plaintiff, **THOMAS W. RED-MOND,** is hereby found to be in contempt of Court and the sentence of the Court is ninety (90) days to the Anne Arundel County Detention Center, in accordance with the power of this Court under Family Law Article 8–105, with said sentence to be suspended, conditioned on and provided that the Plaintiff, **THOMAS W. REDMOND,** shall have until September 15, 1997 to purge himself of contempt by complying with the parties' prior Agreement and Judgment of Divorce by removing the Defendant's name from any outstanding mortgage obligations on all properties referred to in Paragraph 6 of their aforesaid Agreement; and

**IT IS FURTHER ORDERED,** that the Defendant's request for the award of Court costs and counsel fee is hereby held sub curia, pending final disposition of this matter.

Mr. Redmond ultimately obtained a stay of his incarceration from this Court pending the disposition of this appeal.

### DISCUSSION

#### I. Imprisonment as a Sanction

Again, the provision of the property settlement agreement relevant to the disposition of this case reads:

The Wife covenants and agrees that she will grant and convey all of her right, title and interest in and to all of the other aforesaid properties to the Husband. The Husband further agrees that he will re-finance those loans for the aforesaid properties on which Wife is obligated, removing the Wife's name from any outstanding mortgages thereon,

within four (4) months of the date of this Agreement, and that the Husband will indemnify and hold the Wife from any claims arising therefrom. Upon the re-financing, the Wife will execute such Deed or other assurances as may be necessary to carry out and give effect to the foregoing provisions of this Paragraph.

This provision requires Mr. Redmond, in exchange for a conveyance by Mrs. Redmond of her interest in the subject properties, to refinance the loans on those properties so that Mrs. Redmond is no longer obligated to pay those loans. It is undisputed that Mr. Redmond never refinanced the loan on property located at 3503 Canal Street in Ocean City, even though Mrs. Redmond, as required by the agreement, conveyed her interest in that property to Mr. Redmond. Accordingly, the circuit court held him in civil contempt.

Mr. Redmond argues that imprisonment for his failure to refinance the loan is improper because of Article III, § 38 of the Maryland Constitution, which reads as follows:

No person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a spouse or dependent children, or for the support of an illegitimate child or children, or for alimony (either common law or as defined by statute), shall not constitute a debt within the meaning of this section.

According to Mr. Redmond, § 38 precludes his imprisonment because his obligation to refinance the loan was a "debt" within the meaning of § 38. We disagree.

To address Mr. Redmond's argument properly, we must interpret the scope of the term "debt." Before doing so, however, it is useful to review some of the principles applicable to interpretation of constitutional provisions. In interpreting a constitutional provision, our task is to effectuate the intent of its framers; and "such intent is first sought from the terminology used in the provision, with each word being given its ordinary and popularly understood meaning[.]" *Brown v. Brown*, 287 Md. 273, 277–78, 412 A.2d 396 (1980). Further, if

the words are not ambiguous, the inquiry is terminated, "for [we are] not at liberty to search beyond the Constitution itself where the intention of the framers is clearly demonstrated by the phraseology utilized." *Id.* at 278, 412 A.2d 396. Only "[i]f an examination of the language ... demonstrates ambiguity or uncertainty ... [do] we look elsewhere to learn the provision's meaning, keeping in mind the necessity of ascertaining the purpose sought to be accomplished by enactment of the provision." *Id.*

■ In light of these principles, it is clear to us that a debt within the meaning of § 38 involves only those obligations that require the payment of money. This is so for two reasons. First, the ordinary meaning of debt, at least in a legal sense, is an obligation to pay money. *See Black's Law Dictionary* 403 (6th ed. 1990) (Defining "debt," in part, as "[a] sum of money due by certain and express agreement[ ]"). Second, it has long been understood that § 38 was inserted in the Maryland Constitution to protect people who owe money from going to jail for that reason. *See Brown,* 287 Md. at 279–80, 412 A.2d 396. ("The evident purpose of the framers [of § 38] was to abolish the useless, and sometimes cruel, imprisonment of persons who, having honestly become indebted to another, were unable to pay as promised[ ]"; also discussing, generally, the history of § 38).

The fact that a "debt" within the meaning of § 38 encompasses only those obligations that require payment of money is important here, because Mr. Redmond's obligation to refinance the loan was not one that directly required the payment of money. Essentially, what the refinancing required was that Mr. Redmond obtain a second loan—one on which he was the only obligor—to pay off the first loan on the property (on which both he and Mrs. Redmond were obligors); by obtaining the second loan, Mr. Redmond would have become the only person legally obligated to pay for the property. Thus, under the settlement agreement, Mr. Redmond was required to assume a monetary obligation, and not to pay money directly; and for that reason, § 38 of the Maryland Constitu-

tion does not prohibit Mr. Redmond's incarceration for his failure to refinance the applicable loan, absent a good faith attempt and the financial inability to do so.

## II. Assistance of Counsel

Mr. Redmond also argues that the proceedings below violated his right to counsel. We agree.

■ By now it has been firmly established that a defendant in a civil contempt proceeding has a right to counsel where there is a possibility of imprisonment. *See Rutherford v. Rutherford,* 296 Md. 347, 357–63, 464 A.2d 228 (1983) (Holding that "an indigent defendant in a civil contempt proceeding cannot be sentenced to actual incarceration unless counsel has been appointed to represent him or he has waived the right to counsel."). Further, this right applies at every stage of such a contempt proceeding. Therefore, a civil contempt proceeding where there is a possibility of incarceration cannot be prosecuted unless the defendant has been afforded a lawyer, or has knowingly and intelligently waived his right to one. *Id.*

Because a defendant in a civil contempt proceeding where there is a possibility of incarceration has a right to counsel, this Court has held that Rule 4–215 applies to civil contempt proceedings. *Jones v. Johnson,* 73 Md.App. 663, 667–68, 536 A.2d 116 (1988). Rule 4–215, which implements constitutional mandates with respect to waiver of counsel, *See Fowlkes v. State,* 311 Md. 586, 609, 536 A.2d 1149 (1988), outlines the procedures a court must follow before it allows a defendant in a criminal case to proceed *pro se.*[1]

---

1. Rule 2–415 reads, in relevant part:

 (a) *First appearance in court without counsel.* At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:

 (1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

 (2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

Apparently recognizing the awkwardness of using a rule designed primarily for criminal proceedings in a civil case, the Court of Appeals, in 1996, enacted Rule 15–206(e), which essentially tailors the requirements of Rule 4–215 to civil contempt proceedings. It is clear that, like Rule 4–215, Rule

---

(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

(5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

The clerk shall note compliance with this section in the file or on the docket.

(b) *Express waiver of counsel.* If a defendant who is not represented by counsel indicates a desire to waive counsel, the court may not accept the waiver until it determines, after an examination of the defendant on the record conducted by the court, the State's Attorney, or both, that the defendant is knowingly and voluntarily waiving the right to counsel. If the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with that section as part of the waiver inquiry. The court shall ensure that compliance with this section is noted in the file or on the docket. At any subsequent appearance of the defendant before the court, the docket or file notation of compliance shall be prima facie proof of the defendant's express waiver of counsel. After there has been an express waiver, no postponement of a scheduled trial or hearing date will be granted to obtain counsel unless the court finds it is in the interest of justice to do so.

\* \* \*

(d) *Waiver by inaction—Circuit court.* If a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial, the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial.

\* \* \*

15–206(e) implements constitutional mandates. It provides, in relevant part:

(e) *Waiver of counsel if incarceration is sought.* (1) Applicability. This section applies if incarceration to compel compliance is sought.

(2) Appearance in court without counsel.

(A) If the alleged contemnor appears in court pursuant to the order without counsel, the court shall make certain that the alleged contemnor has received a copy of the order containing notice of the right to counsel;

(B) If the alleged contemnor indicates a desire to waive counsel, the court shall determine, after an examination of the alleged contemnor on the record, that the waiver is knowing and voluntary;

(C) If the alleged contemnor indicates a desire to have counsel and the court finds that the alleged contemnor received a copy of the order containing notice of the right to counsel, the court shall permit the alleged contemnor to explain the appearance without counsel. If the court finds that there is a meritorious reason for the alleged contemnor's appearance without counsel, the court shall continue the action to a later time and advise the alleged contemnor that if counsel does not enter an appearance by that time, the action will proceed with the alleged contemnor unrepresented by counsel. If the court finds that there is no meritorious reason for the alleged contemnor's appearance without counsel, the court may determine that the alleged contemnor has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing.

■■ Here, none of the requirements of Rule 15–206(e) were followed. For this reason, it is clear that Mr. Redmond never waived his right to counsel, and that the contempt proceedings were therefore conducted in violation of that right. Accordingly, the circuit court's contempt judgment must be reversed, and the case remanded for an entirely new proceeding.

### III. Violation of Rule 15–206(c)

Rule 15–206 provides, in relevant part:

**Rule 15–206. Constructive civil contempt.**

(a) *Where filed.* A proceeding for constructive civil contempt shall be included in the action in which the alleged contempt occurred.

(b) *Who may initiate.* (1) The court may initiate a proceeding for constructive civil contempt by filing an order complying with the requirements of section (c) of this Rule.

(2) Any party to an action in which an alleged contempt occurred and, upon request by the court, the Attorney General, may initiate a proceeding for constructive civil contempt by filing a petition with the court against which the contempt was allegedly committed.

(3) In a support enforcement action where the alleged contempt is based on failure to pay spousal or child support, any agency authorized by law may bring the proceeding.

(c) *Content of order or petition.* (1) An order filed by the court pursuant to section (b)(1) of this Rule and a petition filed pursuant to section (b)(2) shall comply with Rule 2–303 and, if incarceration to compel compliance with the court's order is sought, shall so state.

(2) Unless the court finds that a petition for contempt is frivolous on its face, the court shall enter an order. That order, and any order entered by the court on its own initiative, shall state:

(A) the time within which any answer by the alleged contemnor shall be filed, which, absent good cause, may not be less than ten days after service of the order;

(B) the time and place at which the alleged contemnor shall appear in person for a hearing, allowing a reasonable time for the preparation of a defense; and

(C) if incarceration to compel compliance with the court's order is sought, a notice to the alleged contemnor in the following form:

TO THE PERSON ALLEGED TO BE IN CONTEMPT OF COURT:

1. It is alleged that you have disobeyed a court order, are in contempt of court, and should go to jail until you obey the court's order.

2. You have the right to have a lawyer. If you already have a lawyer, you should consult the lawyer at once. If you do not now have a lawyer, please note:

(a) A lawyer can be helpful to you by:

(1) explaining the allegations against you;

(2) helping you determine and present any defense to those allegations;

(3) explaining to you the possible outcomes; and

(4) helping you at the hearing.

(b) Even if you do not plan to contest that you are in contempt of court, a lawyer can be helpful.

(c) If you want a lawyer but do not have the money to hire one, the Public Defender may provide a lawyer for you. You must contact the Public Defender at least 10 business days before the date of the hearing. The court clerk will tell you how to contact the Public Defender.

(d) If you want a lawyer but you cannot get one and the Public Defender Will not provide one for you, contact the court clerk as soon as possible.

(e) DO NOT WAIT UNTIL THE DATE OF YOUR HEARING TO GET A LAWYER. If you do not have a lawyer before the hearing date, the court may find that you have waived your right to a lawyer, and the hearing may be held with you unrepresented by a lawyer.

3. IF YOU DO NOT APPEAR FOR THE HEARING, YOU MAY BE SUBJECT TO ARREST.

Here, Mr. Redmond argues that the proceedings violated Rules 15–206(c)(2)(A), (c)(2)(B), and (c)(2)(C). He points out that neither show cause order contained any of the warnings in 15–206(c)(2)(C). He also argues that, because the July 11, 1997 order was the first one he received and because he did

not receive that order until July 16, 1997 (only eight days before the hearing), he was not given the ten days to respond required by Rule 15–206(c)(2)(A), or a "reasonable time" to prepare a defense as required by Rule 15–206(c)(2)(B).

We certainly agree that the requirements of Rule 15–206(c)(2)(C), which sets forth the warnings to be given to an alleged contemnor where incarceration is a possibility, were not met. Nevertheless, because there was strong evidence that the initial show cause order was received by Mr. Redmond on June 16, 1998, we think that the circuit court had "good cause" to commence the July 24, 1997 hearing, even though it was only eight days after Mr. Redmond received the second show cause order. *See* Rule 15–206(c)(2)(A)(stating that, "absent good cause," the "time within which any answer by the alleged contemnor shall be filed … may not be less than ten days after service of the order [ ]"). For the same reason, we believe that the circuit court allowed Mr. Redmond a "reasonable time" to prepare a defense.

## VI. Applicability of Contempt Order

Under the separation agreement, Mr. Redmond was given four months from the date of its signing (March 25, 1987) to refinance the loan on the Ocean City property. Thus, when the divorce judgment incorporating that agreement was entered nearly a year later, Mr. Redmond had been in violation of the agreement for nearly eight months.

Mr. Redmond now argues that because he was in violation of the agreement at the time the divorce decree was entered, that violation was not punishable by contempt. Unfortunately, Mr. Redmond does not cite, and we cannot find, any cases that even remotely support his contention. The fact is that the agreement was not punishable by contempt before its incorporation into the divorce judgment. But, after its incorporation, it certainly was (and still is) punishable by contempt. *See Eigenbrode v. Eigenbrode,* 36 Md.App. 557, 560, 373 A.2d 1306 (1977).

## V. Violation of Automatic Stay

 Mr. Redmond also argues that, because of his bankruptcy filing, the automatic stay set forth in 11 U.S.C. § 362(a)(1) precludes the commencement of civil contempt proceedings against him until the lifting of that stay pursuant to 11 U.S.C. § 362(c). We agree.

The starting point for our analysis is the Bankruptcy Code itself. Section 362(a), which provides for the automatic stay, reads as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

Subsection (b), in turn, provides a list of 16 relatively narrow exceptions to the stay; the only one of those which might be read to apply to a contempt proceeding is contained in subsection (b)(1), which reads as follows:

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor[.]

Given the exception in § 362(b)(1), courts are generally in agreement that criminal contempt proceedings—that is, proceedings where the purpose is solely to punish the debtor—are outside the scope of the automatic stay. *See In re Maloney*, 204 B.R. 671, 674 (Bkrtcy.E.D.N.Y.1996); *In re Moon*, 201 B.R. 79, 84–85 (Bkrtcy.S.D.N.Y.1996); *In re Rook*, 102 B.R. 490, 493–94 (Bkrtcy.E.D.Va.1989). There is, however, no specific exemption in § 362(b) for contempt proceedings, like the one in this case, which have a coercive purpose. Accordingly, there has been some confusion among courts about whether such contempt proceedings are barred by the automatic stay. Some courts have held that, because of the lack of a specific exemption in § 362(b), all civil contempt proceedings are barred by the automatic stay. *See In re Cherry*, 78 B.R. 65, 70 (Bkrtcy.E.D.Pa.1987). Others—most notably this court in *Nnoli v. Nnoli*, 101 Md.App. 243, 646 A.2d 1021 (1994)—have been willing to recognize an exemption for certain civil contempt proceedings, in spite of the lack of a statutory exemption in § 362(b). *See Nnoli*, 101 Md.App. at 250–51, 646 A.2d 1021.

To the extent that *Nnoli* establishes an exemption for certain civil contempt proceedings, we will follow that holding. Nevertheless, the more important problem, left unaddressed by *Nnoli*, is to determine the scope of that exemption.

 This question is best answered by referring to one of the primary goals of the stay—to preserve the status quo with respect to both the debtor's estate and the respective rights of the various creditors. *See Interstate Commerce Commission v. Holmes Transportation, Inc.*, 931 F.2d 984, 987 (1st Cir. 1991) ("The automatic stay is designed to effect an immediate freeze of the status quo at the outset of chapter 11 proceedings, by precluding and nullifying most postpetition actions and proceedings against the debtor in nonbankruptcy fora, judicial or nonjudicial, as well as most extrajudicial acts against the debtor, or affecting property in which the debtor, or the debtor's estate, has a legal, equitable or possessory interest."); *Matter of Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982) ("The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured. . . ."). It is for this reason that the stay, under the language in § 362(a), is so broad. *See Holtkamp*, 669 F.2d at 508 (noting that "Congress intended that the automatic stay have broad application. . . ."). It is also for this reason that we believe that only those civil contempt proceedings that do not in any way affect or touch on the debtor's property are exempt from the stay in § 362(a).

This rule is supported by a substantial number of the cases dealing with this issue. In *Nnoli*, for example, the debtor refused to comply with a court order requiring that he turn over his children to his ex-wife. The court found him in contempt for not doing so, and put him in jail until he produced his children for his ex-wife. This Court, recognizing that the contempt proceeding had nothing to do with the debtor's estate or the rights of his creditors, allowed the contempt proceeding to go forward. *See Nnoli*, 101 Md.App. at 251, 646 A.2d 1021.

In *In re Dunham,* 175 B.R. 615 (Bkrtcy.E.D.Va.1994), the debtor asked a Bankruptcy Court for relief from a contempt citation that ordered him jailed until he agreed truthfully to answer questions and turn over documents—actions that did not affect the debtor's estate. Noting that the contempt order was one designed "to uphold the dignity of the court[,]" the Bankruptcy Court refused to stay the contempt order. *See Dunham,* 175 B.R. at 617–18.

In *In re Kearns,* 168 B.R. 423 (D.Kan.1994), the debtor sought to stay a contempt proceeding initiated against him by his former wife for non-payment of support. The court ruled that, to the extent the contempt proceeding was an attempt to coerce the payment of the support obligations out of the debtor's estate, it was stayed by § 362(a). *See Kearns,* 168 B.R. at 426–27.

In *In re Rook,* 102 B.R. 490 (Bkrtcy.E.D.Va.1989), the debtor sought relief from two separate contempt orders. One of the citations was simply intended to punish the debtor, and contained no purging provision. The other ordered that the debtor be incarcerated until he paid certain debts to his wife. The Bankruptcy Court ruled that: 1) the punitive contempt citation was not barred by the automatic stay; and 2) the coercive contempt citation, because it required the debtor to make payments out of his estate, was affected by the automatic stay. *See Rook,* 102 B.R. at 494–95.

Applying this rule to the facts of this case,[2] it is clear that the circuit court's contempt order, which requires Mr. Red-

---

**2.** There are at least two cases that support the proposition that even those civil contempt proceedings which do affect the debtor's estate are not affected by the automatic stay. *See In re O'Brien,* 153 B.R. 305, 307–08 (D.Or.1993) (holding that contempt citation requiring debtor to exercise a mortgage of his interest in property was not affected by the automatic stay); *In re Montana,* 185 B.R. 650, 652 (Bkrtcy.S.D.Fla. 1995) (holding that contempt citation requiring debtor to pay support order was not affected by automatic stay). On the other hand, in *In re Moon,* 201 B.R. 79 (Bkrtcy.S.D.N.Y.1996), the debtor asked a bankruptcy court for relief from a state court contempt citation that ordered him jailed until he paid a support award and an award of attorneys' fees. Noting that the contempt order required the debtor to pay the money

mond to assume a debt, affects Mr. Redmond's estate. Accordingly, the contempt proceedings should be stayed pursuant to § 362(a).

We conclude our opinion by noting that Mrs. Redmond is not entirely precluded from enforcing the circuit court's contempt order. She is entitled to ask the United States Bankruptcy Court for the District of Maryland to lift the stay pursuant to 11 U.S.C. § 362(d). Indeed, in light of the Bankruptcy Court's expertise on bankruptcy questions, and its knowledge of the particular details of Mr. Redmond's bankruptcy petition, that court is in a much better position than we are to judge whether the enforcement of the circuit court's contempt citation would be in violation of the principles of the Bankruptcy Code.

## VI. Present Ability to Comply

Finally, Mr. Redmond argues that the circuit court erred when it concluded that he had the present ability to comply with the purging provisions of the contempt citation. In light of our holding that the contempt proceedings against Mr. Redmond are stayed pursuant to 11 U.S.C. § 362, we decline to address this issue.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**APPELLEE TO PAY THE COSTS.**

---

out of his estate, the court held that the enforcement of the contempt order was stayed by § 362(a). *See Moon,* 201 B.R. at 86. A United States District Court subsequently reversed the Bankruptcy Court on the ground that the debtor was able to satisfy both the support and attorneys' fees awards out of post-petition income (which is not affected by a bankruptcy filing). *See In re Moon,* 211 B.R. 483, 485–86 (S.D.N.Y.1997). We do not express any opinion on the issue of whether a contempt proceeding to enforce an order of child or spousal support would be stayed by a bankruptcy petition.