Dear Judge Nalley:
You have requested our opinion whether the Public Defender is obligated to represent indigent persons cited for contempt in child support cases that are referred to masters for hearing and recommended decision. You state that the Public Defender has a policy that precludes representation for these individuals at master's hearings because only judges have the authority to incarcerate people, and an alleged contemnor does not risk incarceration at a hearing before a master.[1]
In our view, the Public Defender is required to provide representation to indigent persons at hearings before masters in civil contempt matters when incarceration is sought as a remedy.
 I The Right to Counsel in Civil Contempt Matters
An individual who fails to comply with a court order requiring the payment of child support may be found in contempt of court. Because the purpose of such a contempt proceeding is to coerce the individual to comply with the court order, the contempt proceedings are civil rather than criminal in nature. An individual found in contempt may be incarcerated until the contempt is purged — i.e., the individual makes the payments required by the court.
The Supreme Court has held that due process requires the appointment of counsel for indigent defendants in certain civil proceedings that may result in imprisonment. See In re Gault,387 U.S. 1, 36-37 (1967) (civil juvenile delinquency proceeding). In light of Gault and similar cases, the Court of Appeals has held that an indigent defendant in a civil contempt proceeding cannot be sentenced to incarceration unless he or she has been afforded the right to counsel. Rutherford v. Rutherford, 296 Md. 347, 363,464 A.2d 228, 237 (1983); see also Md. Const., Declaration of Rights, Art. 24. In Rutherford, the Court of Appeals cataloged the overwhelming majority of courts throughout the country that have reached the same conclusion. 296 Md. at 358-60,464 A.2d at 234-35. This right to counsel applies at every stage of a contempt proceeding. Redmond v. Redmond, 123 Md. App. 405,718 A.2d 668 (1998).
Under the Maryland Public Defender Act, the Public Defender has the primary duty to provide legal representation for indigent defendants. Maryland Code, Art. 27A, § 4(a). That obligation extends to a variety of proceedings including those "where possible incarceration pursuant to a judicial commitment of individuals in institutions of a public or private nature may result". Id., § 4(b). Representation must be provided at all stages in the proceeding until final disposition of the case.Id., § 4(d). In a regulation, the Office of the Public Defender has recognized its obligation to represent persons cited for contempt in child support cases who face incarceration. COMAR14.06.01.01.[2] That regulation is silent on whether the Public Defender will represent such persons before a master.
Under Maryland law, there is no question that, in civil contempt proceedings in which an indigent person faces incarceration as a sanction for nonpayment of child support, the Public Defender is required to provide representation. The only question is whether the Public Defender is required to provide representation in the portion of those proceedings that occurs before a master.
 II The Role of Masters in Child Support Contempt Proceedings
A. Authority of a Master
The function of masters in domestic relations matters emanates from two rules: Maryland Rule 2-541 governs the appointment, powers, reports, and procedures of circuit court masters. Maryland Rule 9-207 sets forth the procedures for the referral of family law matters to masters. See also State v.Wiegmann, 350 Md. 585, 714 A.2d 841, 843-45 (1998) (detailing authority of masters in domestic relations cases). Masters also play an important role in court-sponsored programs to manage a high volume of child support enforcement cases.[3]
The judges of a circuit court may appoint standing masters who serve at the pleasure of the court and hear matters referred by the court. Rule 2-541(a)(1), (3). A master has authority generally "to regulate all proceedings in the hearing," including the authority to issue subpoenas, administer oaths, rule upon the admissibility of evidence, examine witnesses, convene, continue, and adjourn hearings, recommend contempt proceedings or other sanctions, and make findings of fact and conclusions of law. Rule 2-541(c). See generally 76 Opinions of the Attorney General 81, 85-86 (1991).
A contempt proceeding arising out of a child support order normally commences when the circuit court issues an order, often referred to as a "show cause order"[4], either on the court's own initiative or at the behest of an aggrieved party. Rule 15-206(b), (c). Among other things, the show cause court order must indicate whether incarceration is being sought as remedy. Rule 15-206(c)(1). If incarceration is sought, the order advises that the defendant has a right to counsel and that the Public Defender may provide counsel, if the person lacks money to hire an attorney. Rule 15-206(c)(2)(C).
If a defendant appears without counsel in a case in which incarceration is sought, the court must ensure that the alleged contemnor is aware of his right to counsel. The court must allow the defendant a reasonable opportunity to obtain counsel or ascertain that the defendant has waived counsel knowingly and voluntarily. Rule 15-206(e).
In many circuit courts, such proceedings are then referred to a master as a matter of course for hearing and recommendation.[5] See Rule 9-207(a)(1)(G). The master conducts a hearing and makes a recommendation to the circuit court, including a brief statement of the master's findings and a proposed order. Rules 2-541(c)-(d); 9-207(c). We understand that, in some jurisdictions, the circuit court itself hears the case if incarceration is specified as a potential remedy in the show cause order.
While the rules grant masters considerable authority to conduct hearings and recommend dispositions, "masters are not judges, nor are they judicial officers." State v. Wiegmann,350 Md. 585, 599, 714 A.2d 841, 848 (1998). In particular, a master cannot issue an order to commence a contempt proceeding, cannot hold a person in contempt, and has no power to order the arrest or incarceration of a defendant. Id. at 845-46.
B. Review of a Master's Recommendation
A party may contest a master's recommendation before the circuit court subject to both procedural and substantive limitations. The rules establish a timetable for the filing and consideration of exceptions. Rules 9-207(d)-(g); 2-541(h), (i). However, on the recommendation of a master that an individual be found in contempt, the court may hold a hearing and direct the entry of an order "at any time." Rule 9-207(f)(3). The court may also rule on exceptions without a hearing, unless a party makes a timely request for a hearing. Rule 2-541(i).
The circuit court's review of the master's recommendation is largely limited to the record. The exceptions are to be decided on the record before the master unless a party can make a particularized showing of the need to introduce additional evidence and the court determines that such evidence should be considered. Rule 2-541(i). Even if the court determines that additional evidence should be considered, it may remand the matter to the master to hear that evidence. Id.
Although the circuit court must make an independent review of the record and exercise its own discretion in reviewing a master's recommendation, the court must accord considerable deference to the master's findings of fact. In particular, "first-level" facts — as opposed to "conclusory" or "dispositional" facts — must be accepted by the circuit court unless unsupported by the record or otherwise clearly erroneous. Domingues v. Johnson, 323 Md. 486,491-94, 593 A.2d 1133, 1135-36 (1991).
Thus, masters have a critical role in contempt proceedings brought to enforce child support orders. We next address whether a hearing conducted by a master in a civil contempt proceeding is a matter in which the Public Defender is required to provide representation to indigent defendants.
 III Representation of Indigent Defendants Before A Master
We understand that the Public Defender has declined to provide representation at hearings before masters on the basis that only judges have the power to incarcerate a defendant for contempt in a child support matter. If the right to counsel depended upon the power of the presiding officer to incarcerate, it would attach only when a master's recommendation for incarceration arrives at the circuit court for an exceptions hearing. However, in such cases, it is the hearing before the master that lays the factual predicate for any subsequent court order. In many cases, the chief benefit of counsel lay in counsel's ability to adduce favorable evidence, to highlight defects in unfavorable evidence, and generally to assist in the development of the factual record at the hearing. Assistance of counsel after the evidentiary hearing may be too little, too late. For this reason, the right to counsel articulated in Gault,Rutherford, and other cases is tied to the nature of the proceeding, not the identity of the presiding officer at a particular stage of that proceeding.
The Court of Special Appeals reached a similar conclusion inReed v. Foley, 105 Md. App. 184, 659 A.2d 325 (1995). That decision involved two separate cases in which indigent defendants who had failed to comply with child support obligations and were sentenced to imprisonment. In each case, defendants had appeared without counsel at a hearing before a master, but were assisted by counsel at later exceptions hearings in the circuit court. The Court of Special Appeals held that the right to counsel had been violated. Noting that a circuit court assesses a master's findings under a "clearly erroneous" standard, the Court of Special Appeals concluded that an adverse finding by a master would place a defendant in jeopardy of incarceration. The Court analogized an exceptions hearing to an appeal, and held that "[d]enial of one's right to counsel at trial is not cured by the appearance of counsel on appeal". Reed v. Foley,105 Md. App. at 196-97, 659 A.2d at 332.
The Court of Special Appeals in Reed concluded that the defendants were entitled to counsel "at every stage in the process." 105 Md. App. at 197, 659 A.2d at 332. See also Redmondv. Redmond, 123 Md. App. 405, 718 A.2d 668 (1998). In similar language, the Maryland Public Defender Act requires representation by that office "at all stages" of specified proceedings. When incarceration is sought in a civil contempt proceeding, a hearing before a master is a critical stage of such a proceeding. Accordingly, both the right to counsel and the obligation of the Public Defender to provide representation for indigents apply.
If incarceration is not sought as a remedy in a contempt proceeding, the constitutional right to counsel is not implicated.[6] Nor is the Public Defender obligated to provide representation.
 IV Conclusion
In summary, it is our opinion that a defendant in a civil contempt proceeding to enforce a child support order has a right to counsel at a hearing before a master if incarceration is being sought as a remedy. If eligible, such a defendant is entitled to representation by the Public Defender.
Very truly yours,
J. Joseph Curran, Jr. Attorney General
Angela M. Eaves Assistant Attorney General
__________________ Robert N. McDonald Chief Counsel Opinions Advice
[1] The Public Defender may also be concerned about its ability to provide representation at masters hearings given its budgetary constraints. In a prior opinion, we concluded that if the Public Defender is unable to represent a defendant because of a conflict, and if funds are unavailable for a panel attorney, a defendant would be eligible for representation by an attorney appointed by the court. 76 Opinions of the Attorney General 341 (1991).
[2] That regulation provides:
A. The Office of the Public Defender shall provide representation to a person cited for contempt for failure to pay court-ordered support payments under the following circumstances:
(1) Upon request by the Court or upon application by the person cited;
(2) If it is determined that the person cited is indigent in accordance with Article 27A, §§ 2(f) and 7(a), Annotated Code of Maryland, and the person cited has no private counsel who had previously represented him in a divorce or paternity proceedings whose appearance is still pending on the cited person's behalf; and
(3) That the person cited is actually facing a prison term.
B. In making the determination to represent a person cited for contempt in non-support proceedings, it shall be incumbent upon the Office of the Public Defender to ascertain, before the hearing, whether the:
(1) State's Attorney will actually seek incarceration; or
(2) Department of Social Services, or counsel prosecuting the support case, or both, is seeking incarceration.
[3] The Circuit Court for Baltimore City has instituted a case management system for child support contempt proceedings. As part of this program, court masters play a key role in monitoring obligors who are delinquent in paying child support. If an obligor fails to make payments, to report diligent efforts to obtain employment, to appear when summoned, or to carry out other obligations related to a child support order, the master may recommend initiation of contempt proceedings before the court, including potential incarceration. Under this program, masters are able to assist the court in handling the high volume of child support enforcement actions, while those cases in which incarceration is a potential remedy are handled by circuit court judges.
[4] See Jones v. State, 351 Md. 264, 718 A.2d 222 (1998).
[5] We understand that the Public Defender questions the basis for this procedure under both the rules and the Constitution. However, the Court of Appeals has recognized that the rules clearly authorize this procedure. See State v.Wiegmann, 350 Md. 585, 714 A.2d 841, 844 (1998). Similarly, inUnited States v. Raddatz, 447 U.S. 667 (1980), the Supreme Court held that an analogous referral procedure under the Federal Magistrates' Act met the requirements of the Due Process Clause. The Supreme Court left open the question whether a court could reject credibility findings of a magistrate without seeing and hearing the witnesses itself. Id at 680 n. 7.
[6] We understand that some courts employ masters to help separate out from the high volume of support enforcement cases those that involve a genuine threat of incarceration. For example, the court may routinely refer contempt actions to a master with the direction or understanding that the master will refer any case involving possible incarceration back to the court for a de novo hearing. In such a system the court does not make use of the record before the master, much less accord it the deference implied by the "clearly erroneous" standard. In our opinion, such a proceeding before a master would not implicate the right to counsel — or possible representation by the Public Defender — if the respondent is informed at the outset of a proceeding before a master that he or she does not face incarceration in that proceeding and if any later referral to the circuit court does not rely upon the proceedings before the master.
 *Page 41